STARKS *v.* STATE

No. 42387          December 10, 1962          147 So. 2d 503

*Herring & McCoy,* Meadville, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

McGEHEE, C. J.

This is an appeal from a conviction of the appellant L. C. Starks in the Circuit Court of Franklin County, who was sentenced to serve a term of 9 years in the Mississippi state penitentiary.

At about sundown or "dusk dark" on the night of December 5, 1961, Mr. Virgil Mulkey, a resident of the county, who was about 74 years of age, heard his dog barking in the front yard, and from this he knew that someone was at or approaching his front gate. He went to the gate, and he testified at the trial that the appellant was at or near the front gate, and stated to Mr. Mulkey that he had come to see about getting an oil lease. Thereupon Mr. Mulkey realized that the caller was not merely interested in getting an oil lease but had come for some other purpose. Mr. Mulkey then turned to go back into his house, and was struck to the ground, that something like a quilt, blanket, sack, or other covering was placed over his head, and he was

further beaten about the face and head and robbed of his wallet, which contained $42, or $43. The wallet was apparently never found, but Mulkey's pocketknife was found at the scene, but the last mentioned fact is not of much significance.

According to the testimony of both Mr. Mulkey and the appellant, they had known each other for 15 or 20 years, both being reared in the same community a few miles apart. However, Mr. Mulkey stated to Sheriff Frank Corbin and to Mr. Burnice Beasley, a highway patrolman, when they questioned him as to what had happened shortly after the assault, that he "did not know who did it, whether they were white or colored, or how many of them there were."

The victim of the assault managed to reach the home of a neighbor by going about 200 yards across a pasture, and this neighbor carried him to Meadville where they reported the incident to the sheriff, who asked the neighbor to take the victim to the hospital. The record fails to disclose whether or not the victim told his neighbor, Mr. Louis Leonard, that the appellant had assaulted and robbed him. In fact, he did not report to the sheriff and highway patrolman the identity of his assailant until after these officers had located a car parked on the streets of Meadville, and which they learned belonged to the appellant, and on one of the rear wheels of which was a "ground grip" or "mud-grip" tire, and in the trunk of which they found a similar tire. It was not until after this discovery that Mulkey announced to the officers "I now know who it was that robbed me", and he first charged the appellant with the crime one week later.

Mr. Mulkey insisted in his testimony that he did not talk with the sheriff on the evening of the commission of the crime, but that he was carried by his neighbor, Louis Leonard, directly to the hospital, and from the hospital directly to his sister's home. However, both the

sheriff and Mr. Leonard testified that Mulkey was carried from the hospital back to the filling station where he had gotten a social security check for $40 cashed during the forenoon, and where there had gathered a crowd of persons, including Ray Whittington and several others, when Mulkey stated that he "did not know who hit him, whether they were white or colored, or how many there were".

Whittington and three more of these witnesses were offered on behalf of the appellant to prove the statement thus made by Mulkey which was inconsistent with his testimony at the trial. But upon the testimony being objected to on the ground that no predicate had been laid, the objection was sustained. The refusal of the trial court to permit these witnesses to testify as to the inconsistent statement made to them by Mulkey, without a predicate having been laid for that purpose, is assigned as error on this appeal. And it is also assigned as error that the verdict of the jury is against the overwhelming weight of the testimony.

It appears that the appellant, along with several other persons, was present at the filling station during the forenoon of December 5, 1961, when Mr. Mulkey got the filling station operator to cash his social security check, and this fact was one of the circumstances relied upon by the State to prove appellant's guilt of the crime.

The appellant contends that the testimony of Ray Whittington and others would have been competent as a part of the res gestae and that therefore the appellant was entitled to prove the prior inconsistent statement of Mr. Mulkey that he "did not know who hit him, whether they were white or colored, or how many there were."

■■ "The rule as to the admissibility of evidence known as the 'res gestae rule' has been declared to be incapable of any precise definition, and it has been applied to so many different and unrelated situations that it has been said that the difficulty of formulating a de-

scription of 'res gestae' which will serve for all cases seems insurmountable.'' 32 C. J. S., Evidence, Sec. 403, p. 19. Again, in this same text, it is stated: ''No hard and fast rule can be laid down as to the admissibility of evidence as a part of the res gestae. The facts and circumstances presented in different cases vary so widely that the courts have come to the point of adjudging this question as it is presented by the particular case under consideration; and the admissibility vel non of evidence as part of the res gestae is a matter resting very largely in the discretion of the trial court.'' Ibid. pp. 21, 22.

In the case of Chatman v. State, 145 So. 2d 707, not yet reported in State Reports, the appellant undertook to prove a conversation had with the prosecutrix by the witnesses offered and the court correctly sustained the objection on the ground that no proper predicate had been laid for the testimony of these impeaching witnesses. Thereupon the appellant announced that he would call the prosecutrix as an adverse witness, and the court said that the prosecutrix could not be called as an adverse witness and sustained the State's objection. The defendant did not then ask to call her for ''further cross-examination'', as he would have been entitled to do. This Court, however, observed that the evident purpose in asking that she be called back to the stand was to lay the proper predicate, and the court was liberal in that it reversed the case for a new trial and said, among other things, that the defendant ''should be accorded the right and privilege of calling for further cross-examination, any State witness, who has previously testified.'' The case was reversed on this and one other ground. However, in the case at bar the appellant did not request the court to let him recall Mr. Mulkey for any purpose, that is to say either as an adverse witness or for further cross-examination.

Nevertheless, we think that it is doubtful whether the testimony of the sheriff and highway patrolman

as to the car tracks that they observed at Mr. Mulkey's home and elsewhere en route to Meadville was competent under the decisions of this Court in the cases of Johns v. State, 130 Miss. 803, 95 So. 84; Joyce v. State, 227 Miss. 854, 87 So. 2d 92. But even if the testimony as to the car tracks at the scene of the crime when related to the type of one tire found on the defendant's car and another found in the trunk thereof should be held to be competent evidence under the above cited cases, we are still of the opinion that the verdict in this case is against the great weight of the evidence in view of the fact that the victim of the robbery was well acquainted with the appellant and failed to name him when asked specifically by the officers as to who committed the crime, and was uncertain as to the color of the car in which the appellant came to the Mulkey home, he stating that he "believed it was white. It was a light colored car". Whereas the highway patrolman testified that the appellant's car was "a 1956 Buick, two-tone green. Light green." Jefferson v. State, 52 So. 2d 925 (Miss.); Dickerson v. State, 54 So. 2d 925 (Miss.); Cole v. State, 217 Miss. 779, 65 So. 2d 262.

Moreover, the appellant testified as great length when called as a witness in his own behalf, and he accounted for where he was practically every moment of the day from early on the morning of December 5, 1961, and until after the assault had been made on Mr. Mulkey. At the time he testified it had only been about three weeks since that occurrence. He told about having stopped at a house on that day and borrowing an automobile jack, about having gone to the Chevrolet place in Natchez, and about having gone to the town or village of Kirby during the afternoon of that day when he carried a girl to get her hair fixed, and also about numerous other incidents that occurred during the day, and his testimony as to his alibi was wholly uncontradicted. Of course, the State should not be expected to bring all of

the witnesses to court who would know whether or not these incidents occurred, but it would seem that he could have been contradicted as to some of the incidents at least if they did not occur; for instance, such as borrowing an automobile jack on the way.

Then, too, this defendant was questioned at some length the next day, and at one time in the presence of FBI officers in the room of the board of supervisors, and the State did not claim that he ever intimated that he was guilty of the crime charged, and the appellant claimed that about 6:00 or 6:30 that afternoon he was 13 miles from Mr. Mulkey's home at the filling station where Mulkey had gotten his check cashed during the forenoon.

At one place in the record the reader would naturally anticipate that a confession from the defendant was forthcoming. For instance, the appellant was asked about his being questioned in the board of supervisors' room in the presence of the FBI officers, and he was asked whether any hope or promise of reward was made to him at that time, and to which the sheriff replied "No." "Did you threaten him in any way? A. No, indeed. Q. Any statement he made, was it free and voluntary? A. Yes, indeed. Q. No threats? No, indeed. Q. What did the defendant tell you on that occasion? A. He just definitely told me he didn't do it. That was all."

While testifying at the trial, the victim of the robbery was asked: "Q. Could you tell who he was? A. Why sure. Q. By looking at him? A. Why sure. Q. By his voice could you tell who he was? A. Why sure." Nevertheless he told the sheriff and the highway patrolman on the very night of the robbery that he could not tell whether his assailant was white or colored, or how many assailants there were.

For the foregoing reasons we have concluded that this case should be reversed and remanded to be passed upon by another jury. We do not think that the proof

shows the guilt of the appellant beyond every reasonable doubt.

Reversed and remanded.

*Kyle, Ethridge, Gillespie, and McElroy, JJ.,* concur.