FRUGÉ, Judge.
This case comes to us as an appeal from trial court’s granting a temporary restraining order and a preliminary injunction, thereby forcing members of United Brotherhood of Carpenters and Joiners of America, Local No. 403, to return to their jobs following a walkout.
Plaintiff, the Rust Engineering Company (hereinafter called Rust) is. a construction contractor engaged in interstate commerce. Rust had a “national contract” with the United Brotherhood of Carpenters and Joiners of America. In that contract it was stipulated that:
“The Employer agrees that there will be no lock-out and the Union agrees that *156 there will be no stoppage of work or any strike of its members, either collectively or individually until said dispute or misunderstanding has been referred to the International Office of the Union and arbitrared between such International Office of the Union and the Home Office Representative of the Employer.”
In addition, Local 403 had an agreement with Rust, which included a provision very similar to that between Rust and the national organization.
“All grievances other than those pertaining to general wage rates that may arise on any job covered by this agreement shall be handled in the following manner without permitting grievances to interfere in any way with the progress or prosecution of the work during the course of this procedure. In other words, there shall be no strike, walkout, or work stoppage during the course of this procedure.”
At a meeting of members of Local 403, they decided to “take a walk” and they did not report for work on October 10 or 11, 1967. On October 12, union members set up a picket line at the job-site. On the afternoon of October 13, 1967, a temporary restraining order was obtained which ordered that the members of Local 403 be prohibited from breaching their contract, from picketing, and from striking. Subsequently, the members of Local 403 returned to their jobs.
After a hearing, the temporary restraining order was extended as a preliminary injunction, and this appeal was taken therefrom.
While appellant did not benefit us with providing specifications of errors or syllabuses in its briefs, we gathered from the briefs that its position is essentially the same as it was in the lower court. There, appellant argued that the state district court had no “jurisdiction” to issue a temporary restraining order or preliminary injunction because the breach of contract sought to be enjoined in this case constituted unfair labor practice over which the National Labor Relations Board had exclusive jurisdiction and because state courts are bound to apply “federal labor law” in labor dispute cases, which law deprives state courts of the power to issue any restraining order or injunction.
The first issue is whether or not our district court had jurisdiction to hear this action and to grant relief.
It appears well settled, and defendant-appellant concedes, that state courts possess jurisdiction concurrent with that of federal courts in regard to suits to enforce labor contracts. Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962). While Section 301 of the Labor Management Relations Act (29 U.S.C.A. § 185)[1] gave federal courts jurisdiction to hear cases involving a breach of a labor contract, that act nowise limited the pre-existing jurisdiction of the state courts to enforce labor contracts.
Defendant contends, however, that the members’ breach of the labor contract in the instant case is arguably an unfair labor practice under the exclusive jurisdiction of the NLRB, thereby pre-empting any state (or federal) court from being able to hear the action and provide redress. This contention is apparently based upon the United States Supreme Court decisions of San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), and Garner v. Teamsters, etc., Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953). But the rule of these cases has not been “applied to cases where it could not fairly *157 be inferred that Congress intended exclusive jurisdiction to lie with the NLRB”. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 911, 17 L.Ed.2d 842 (1967).
“In Lucas Flour [Local 174, Teamsters, Chauffeurs, Warehousemen and Helpers v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593] as well as in Atkinson [Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462] the Court expressly refused to apply the preemption doctrine of the Gar-mon case; and we likewise reject that doctrine here where the alleged conduct of the employer, not only arguably, but concededly, is an unfair labor practice within the jurisdiction of the National Labor Relations Board. The authority of the Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by § 301, but it is not exclusive and does not destroy the jurisdiction of the courts in suits under § 301. If, as respondent strongly urges, there are situations in which serious problems will arise from both the courts and the Board having jurisdiction over acts which amount to an unfair labor practice, we shall face those cases when they arise This is not one of them, in our view, and the National Labor Relations Board is in accord.”
Smith v. Evening News Association, 371 U. S. 195, 83 S.Ct. 267, 268, 9 L.Ed.2d 246 (1962).
In view of the Smith and Vaca cases, supra, the present rule appears to be that where an action is brought to enforce a labor contract or to recover damages for the breach thereof, such action should be brought in federal or state district court, even though the breach of the collective bargaining contract might constitute an unfair labor practice.
Even assuming that there was a bona fide “labor dispute” in the instant case,[2] such does not per se give the National Labor Relations Board exclusive jurisdiction. Congress specifically refused to make all breaches of labor contracts unfair labor practices when it passed § 301.
In considering the legislative history behind the passage of Section 301, the United States Supreme Court, in the case of Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 524 (1962) said:
“The bill which the Senate originally passed the following year contained a provision making a breach of a collective bargaining agreement an unfair labor practice subject to the jurisdiction of the National Labor Relations Board, S-1126, 80th Cong., 1st Sess., §§ 8(a) (6), (5), as well as a provision conferring jurisdiction upon the federal courts over suits for violation of collective agreements. In conference, however, it was decided to make collective bargaining agreements enforceable only in the courts. ‘Once parties have made a collective bargaining contract’, the conference report stated, ‘the enforcement of that contract should be left to the usual processes of the law and not to the National Labor Relations Board.’ ”
The Louisana cases defendant relies upon are inapplicable here because none of those cases involved an action for the breach of a collective bargaining agreement. Evangeline Downs, Inc., v, Pari-Mutuel Clerks’ Union, 191 So.2d 358 (La.App.3d Cir., 1966); Barksdale and LeBlanc v. Local No. 130, International Brotherhood of Electrical Workers, 143 So.2d 770 (La.App. 1st Cir., 1962); Toomer v. Local No. 995, International Brotherhood of Electrical Workers. 131 So.2d 248 (La.App. 1st Cir., 1961).
*158 Therefore, we find that the Louisiana district court had jurisdiction to hear this action and to provide relief.
The next and most serious issue is whether or not a state court may enjoin peaceful picketing (or a walkout) which is violative of a collective bargaining agreement. This determination rests upon the effect of the Norris-LaGuardia Act[3] upon state courts’ power to utilize their own remedies.
In Sinclair Refining Company v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962), the majority of the United States Supreme Court said that Section 301 (which gave federal district courts jurisdiction to hear actions involving a breach of a collective bargaining agreement) must be construed with the Norris-LaGuardia Act (which prohibits any federal district court from granting an injunction except in certain cases) and upon reading the two provisions together, it becomes apparent that no federal district court can grant an injunction or restraining order for the purpose of enforcing a labor contract.
The legislative history of the passage of Section 301 makes it abundantly clear that that section was not intended to diminish or anywise limit the powers of the states to invoke their usual remedies in enforcing labor contracts.[4]
In the Courtney case, supra, the United States Supreme Court said:
“A principal motive behind the creation of federal jurisdiction in this field was the belief that the courts of many States could provide only imperfect relief because of rules of local law which made suits against labor organizations difficult or impossible, by reason of their status as unincorporated associations. (82 S.Ct. 519, 524)
“ * * * The clear implication of the entire record of the congressional debates in both 1946 and 1947 is that the purpose of conferring jurisdiction upon the federal district courts was not to displace, but to supplement, the thoroughly considered jurisdiction of the courts of the various States over contracts made by labor organizations. (Id. p. 525)
“ * * * By contrast, Congress expressly rejected that policy with respect to violations of collective bargaining agreements by rejecting the proposal that such violations be made unfair labor practices. Instead, Congress deliberately chose to leave the enforcement of collective agreements ‘to the usual processes of the law.’ (id. p. 526)
“ * * * It is implicit in the choice Congress made that ‘diversities and conflicts’ may occur, no less among the courts of the eleven federal circuits, than among the courts of the several States, as there revolves in this field of labor management relations that body of federal common law of which Lincoln Mills spoke. But this not necessarily un-healthy prospect is no more than the usual consequence of the historic accetpance of concurrent state and federal jurisdiction over cases arising under federal law. To resolve and accommodate such diversities and conflicts is one of the traditional functions of this Court.” (Ibid)
Nor is there evidence of a legislative intent for the Norris-LaGuardia Act to affect any of the remedies qr proceed *159 ings of the state courts. See American Dredging Co. v. Local 25, Marine Division etc., 338 F.2d 837 (3d Cir., 1964). The act itself clearly states that it is limited to prohibiting federal courts from enjoining labor disputes in most instances. As stated in Marine Cooks & Stewards v. Panama Steamship Co., 362 U.S. 365, 80 S.Ct. 779, 783, 4 L.Ed.2d 797 (1960):
“The language is broad because Congress was intent upon taking the federal courts out of the labor injunction business except in the very limited circumstances left open for federal jurisdiction under the Norris-LaGuardia Act.”
The design of the Norris-LaGuardia Act, therefore, appears to be simply to remove a certain class of actions from federal jurisdiction. It seems illogical, even recognizing that federal law must be applied in labor-related cases, to conclude that the Norris-LaGuardia Act was designed to prevent state courts from issuing injunctions in those cases where they had jurisdiction to hear the matter.
In construing the Norris-LaGuardia Act, along with the later-passed Section 301 of the Labor Management Relations Act, it still does not appear that Congress intended for state courts to be deprived of their inherent powers to issue injunctions in labor disputes (the jurisdiction of which was not pre-empted by the NLRB). In other words, if the Norris-LaGuardia Act was not intended to limit powers of state courts, and if Section 301 of the Labor Management Relations Act was not intended to affect the jurisdiction or powers of the state courts, then it would seem to follow that these two statutes should not be construed together so as to deprive state courts from their inherent right to issue injuntions to enforce contracts. As noted in American Dredging Co., supra, 338 F.2d at p. 853:
“There has not been cited to us a single case, before or after Sinclair, [Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962)] which holds that the limitations of § 4 of the Norris-LaGuardia Act extends to the states.
“On the other hand, two state courts since Sinclair have held that they do not so extend, and prior to it, two other states, and a district court in this Circuit, reached the same conclusion.”
The Sixth Circuit Court of Appeal in the case of Avco Corporation v. Aero Lodge No. 735 etc., 376 F.2d 337 (1967) reached a conclusion opposite of that in the American Dredging Co. case, which conflict apparently caused the United States Supreme Court to grant a Writ of Certiorari in the Avco Corporation case, which decision has just been handed down. 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). While the Supreme Court reiterated the general rule announced in Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) “ ‘that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws”, if specifically avoided answering the precise question presented in the instant case. Relevant to the instant case, however, the Supreme Court did observe the following: “We find it unnecessary to rule on the holding of the court of appeals below that ‘the remedies available in State Courts are limited to remedies available under Federal law.’ ” The Supreme Court acknowledged that this language was purely dictum.
Collective bargaining agreements are favored by the national labor policy. “The federal labor laws seek to promote industrial peace * * * by fostering a system of employee organization and collective bargaining.” Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 912, 17 L.Ed.2d 842 (1967). In order that federal labor policy encouraging collective bargaining can be effective, axiomatically, federal labor policy must encourage effective enforcement of collective bargaining agreements.
*160 This issue was recognized by the dissenting opinion in Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 1345, 8 L.Ed.2d 440 (1962)
“The question arises whether today’s prohibition of injunctive relief is to be carried over to state courts as a part of the federal law governing collective agreements. If so, § 301, a provision plainly designed to enhance the responsibility of unions to their contracts, will have had the opposite effect of depriving employers of a state remedy they enjoyed prior to its enactment.” [5]
Since the United States Supreme Court has yet to determine the precise question here, since effective enforcement of labor contracts aids industrial peace, and since there is respectable authority for the view that we take herein, we adopt the position announced in McCarroll v. Los Angeles County District Council of Carpenters, 49 Cal.2d 45, 315 P.2d 322 (1957), certiorari denied, 355 U.S. 932, 78 S.Ct. 413, 2 L.Ed.2d 415 (1958), and decisions from other states,[6] and hold that the federal labor policy, upon which any “federal law” must be based, does not prohibit a state court from utilizing its own remedies in providing redress when a labor organization breaches its labor contract with management.
Appellants also urged that the Louisiana “Little Norris-LaGuardia Act” R.S. 23:841 et seq., prevents state courts from issuing injunctions relating to labor disputes. It appears well settled now, however, that whenever there is a property right involved, an injunction will lie to prevent injury to that property right, notwithstanding the provision of R.S. 23:841 et seq. Douglas Public Service Corp. v. Gaspard, 225 La. 972, 74 So.2d 182 (1954). See also Godchaux Sugars v. Chaisson, 227 La. 146, 78 So.2d 673 (1955). In the Gaspard case, the Supreme Court declared R.S. 23:841 to be unconstitutional insofar as the attempts to deprive state courts from using any remedy necessary to protect property rights. Likewise, we hold that that statute does not preclude the district court from issuing an injunction in the instant case.
For the foregoing reasons the judgment of the trial court is affirmed at appellant’s costs.[7]
Affirmed.

. “(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. * * * ”

. The only evidence in the record is that members of Local 403 walked off their jobs because they were vaguely disenchanted with their contract. No specific grievances were mentioned, and an officer of Local 403 admitted that there was no labor dispute at the time of the walkout.

. Sec. 4. “No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out any labor dispute * *

. But see Local 174 Teamsters, etc., v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962), where the majority held that “substantive principles federal labor law” must be applied in state courts in enforcing labor contracts as a result of the passage of Section 301. This holding is one based purely on policy reasons and appears somewhat at odds with the intent of Congress in passing Section 301, as discussed in the text herein. See also Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S. Ct. 912, 1 L.Ed.2d 972 (1957).

. Actually, as recognized by the dissent in the Sinclair case, the difficulty appears to be a conflict between one federal labor policy favoring a “uniform” federal law applicable to all labor matters of like classes and an opposing (at least on this particular point) federal labor policy favoring the formation (and, necessarily, enforcement) of collective bargaining agreements as a crucial instrument for bringing about labor-management harmony and industrial peace.

. Lion Oil Co. v. Marsh, 220 Ark. 678, 249 S.W.2d 569 (1952); Radio Corporation of America v. Local 780 etc., 160 So.2d 150 (Fla.App.Ct., 1964); Dugdale Construction Co. v. Operative Plasterers, etc., 257 Iowa 997, 135 N.W.2d 656 (1965); McLean Distributing Co. v. Brewery & Beverage Drivers etc., 254 Minn. 204, 94 N.W.2d 514 (1959); Curtis v. Tozer, 374 S.W.2d 557 (Mo.App.1964); C. D. Perry & Sons, Inc., v. Robilotto, 39 Misc.2d 147, 240 N.Y.S.2d 331 (1963); General Electric Co. v. International Union etc., 93 Ohio App. 139, 108 N.E.2d 211 (1952); Shaw Electric Co. v. International Brothers Electric Workers etc., 418 Pa. 1, 208 A.2d 769 (1965); International Longshoremen’s Ass’n v. Galveston Maritime Ass’n, 358 S.W.2d 607 (Tex.Civ.App.1962).

.Since this appeal was taken only for us to determine if state courts possessed “jurisdiction” to issue an injunction to halt a labor walkout in violation of a collective bargaining agreement, we find it unnecessary to consider if the union itself can be liable for the concerted acts of its members.