215 So.2d 691 (1968)
MASONITE CORPORATION
v.
INTERNATIONAL WOODWORKERS OF AMERICA, AFL-CIO, and Local 5-443, et al.
No. 45019.
Supreme Court of Mississippi.
November 18, 1968.
*692 Gibbes & Graves, Laurel, Hulse Hays, Jr., Cincinnati, Ohio, for appellant.
James E. Youngdahl, Little Rock, Ark., for appellees.
BRADY, Justice:
This is an appeal by Masonite Corporation from a final decree of the Chancery Court of the Second Judicial District of Jones County dismissing with prejudice appellant's bill for injunction which would have made permanent a temporary injunction which had been issued on May 2, 1967, pursuant to a fiat dated May 1 issued by Justice Robertson of the Mississippi Supreme Court.
Masonite Corporation operates a large manufacturing plant in Laurel, Mississippi, which produces finished wood products for both inter and intra-state sale. On March 3, 1967, Local 5-443 of the International Woodworkers of America, AFL-CIO, executed with Masonite a collective bargaining agreement which provided for a fivestep program for resolving grievances of employees against Masonite. The final step of this program was arbitration. In addition to Article 26 of the contract which provides for the adjustment procedure and for arbitration, Article 23 of the collective bargaining agreement provides what is commonly referred to as a "no strike" clause. Section 1 of Article 23 states:
At no time, during the full term of this agreement, shall the Union or any of its members authorize or engage in any strike, walkout or other type of work stoppage. At no time, during such term, shall the employer lock out any of its employees.
However, on April 21, 1967, the International and Local unions called a strike *693 at the Masonite plant in Laurel. The appellees allege in their answer (1) that the Masonite Corporation had required employees to cross departmental lines in violation of the contract, (2) that Masonite had been neglectful in processing the grievances of the employees, and (3) that as a result of the actions of Masonite, which the Union contended amounted to unfair labor practices, the contract with the collective bargaining agreement had been breached by appellant and was not in full force and effect on that date. On April 21 or the day thereafter pickets appeared before the Masonite plant in Laurel; cars and people were prohibited from entering or leaving the plant; and signs appeared which stated "On strike, I.W.A., Local 5-443, AFL-CIO."
Violence attended the picketing. On the morning of April 24 as Mr. Paul, the general manager of the Mississippi operation, and a passenger, Mr. Lewis Carter, approached the plant, they found the entrance to the parking lot completely blocked by cars and people. The crowd converged on Mr. Paul's car and began to rock it, smashed the back window with a pipe, attempted to kick out the side windows, and struck the windshield, but failed to break it. Mr. Paul was prevented from entering the plant. On the evening of April 21 as Mr. Shows, a supervisory employee of Masonite, drove his car through the front gate, a part of the crowd surrounded his automobile and shook the car. When Safety Supervisor Green attempted to leave the plant on the same date by the wood yard exit, his car was rocked and damaged by the strikers. When Mr. Goodman, Maintenance and Engineering Manager, was leaving the plant, he was assaulted by one of the strikers.
On May 1, 1967, Masonite filed this bill for injunction in Cause Number 21,703 against the Union and the officers of the Union in the Chancery Court of Jones County. An injunction was issued pursuant to a fiat executed by Mississippi Supreme Court Justice Robertson on May 1, 1967, after Masonite filed a $5,000 bond with the clerk of the Chancery Clerk of Jones County. On May 2, 1967, the writ of injunction was served on all of the original defendants in Masonite Corporation v. International Woodworkers of America, AFL-CIO, etc., 206 So.2d 171 (Miss. 1967), and was posted at two public places in Laurel as well as on the Masonite main gate entrance and at seven other locations around the plant. In spite of the injunction, although signs were taken down, strikers and other persons continued to stand across the street from Masonite and at other entrances to the plant at regular four hour intervals, keeping a surveillance of the property and noting the people who went in and out of the Masonite Corporation grounds. On May 4, 1967, Masonite, through Mr. Paul, its General Manager, filed contempt charges against the International, the Local, the five officers who signed the collective bargaining agreement, and eighty individual defendants of the local union. In the contempt case, Masonite Corporation v. International Woodworkers of America, AFL-CIO, etc., supra, the Mississippi Supreme Court reviewed the acquittal in the lower court of the defendants and upheld the acquittal on charges of criminal contempt; however, we held that the evidence did establish that the Union and its officials who signed the collective bargaining agreement containing "no strike" provisions were guilty of civil contempt, but that it did not establish that stewards and committeemen were guilty of such contempt. It was held that the constant surveillance of the plant at all gates by silent pickets day and night constituted a violation of the temporary injunction against continuing such picketing.
Although not essential to the determination of the issues involved in the case at bar, it is to be noted that in addition to this cause the appellant on April 25, 1967, filed a suit for damages for breach of contract in the United States District Court, Southern Division, Hattiesburg, Mississippi, Civil Action No. 2183, which is now pending.
*694 In passing, it should also be noted that prior to May 1, 1967, the date of the filing of the bill for injunction by appellant, Masonite Corporation, in the case at bar, a former bill for injunction, Cause No. 21,693, had been filed in the Chancery Court of Jones County. The bill for injunction in Cause No. 21,693 was based upon the prohibiting of ingress and egress of employees to the plant of appellant by the strikers and the violence being perpetrated by the strikers. The chancellor suggested the consolidation of the first bill for injunction and the case at bar, which the appellees opposed. Trial proceeded on Cause No. 21,703, the case at bar.
The present case came on to be heard on the petition of Masonite which would make permanent the temporary injunction that had been issued on May 2. On June 22, 1967, after hearing the evidence and oral arguments which had been presented, the chancellor dismissed with prejudice the petition for the injunction. Appellant then filed a petition for temporary injunction pending an appeal from the Chancery Court of the Second District of Jones County. This petition was overruled by Justice Gillespie, Presiding Justice of the Mississippi Supreme Court, on July 10, 1967, and subsequent thereto, on July 11, 1967, simultaneously with the filing of Justice Gillespie's denial of a temporary injunction, a petition for writ of supersedeas was filed by appellant in the Chancery Court of Jones County. The chancellor overruled the petition for the writ of supersedeas on July 21, 1967. Thereafter, on July 24, 1967, an application for the issuance of a writ of supersedeas was presented to Justice Ethridge, Chief Justice of the Mississippi Supreme Court, who granted it conditioned on the execution of a bond in the sum of $25,000. Thus the case at bar is presented to us.
It appears from the record, briefs of counsel and from oral arguments made by counsel, that on May 29, 1967, the appellee, and that subsequently the appellant, filed complaints with the Regional Director of the National Labor Relations Board in New Orleans. On July 1, 1967, the Regional Director of the National Labor Relations Board informed the parties that he would not file any complaint based upon the charges made by the Union of unfair labor practices on the part of Masonite Corporation.
The first question which must be decided is: Does a state court have jurisdiction to hear a case where unfair labor practices are alleged to have been committed in violation of a collective bargaining contract or has the field been preempted by either the federal courts, under Section 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185(a) (1964), or by the National Labor Relations Board, under the National Labor Relations Act?
Section 301 provides:
Suits by and against labor organizations  Venue, amount, and citizenship
(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. (Emphasis added.)
This section has been interpreted by the United States Supreme Court and by various state courts as giving federal courts only concurrent jurisdiction with state courts over cases involving the violation of labor contracts.
In Charles Dowd Box Company v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962), the sole question ruled on was whether Section 301 operated to divest a state court of jurisdiction in a suit for violation of a contract between a labor organization and an employer. The United States Supreme Court held that there is *695 nothing in Section 301 which tends to deprive a party to a collective bargaining agreement of the right to seek redress in appropriate state courts. Section 301 does not state or even suggest that its purpose is to give federal courts exclusive jurisdiction. State courts may enforce federally created rights, and exclusive federal jurisdiction must be clearly shown. The clear implication from the entire record of the congressional debates surrounding Section 301 and the entire judicial history of that section leads to the inescapable conclusion that the Congress did not intend that Section 301 was to displace state court jurisdiction, but rather to expand the jurisdiction under that section to include federal courts. The Supreme Court of the United States in the Dowd Box case, supra, speaking through Justice Stewart, stated:
The legislative history makes clear that the basic purpose of § 301(a) was not to limit, but to expand, the availability of forums for the enforcement of contracts made by labor organizations. (368 U.S. at 508, 82 S.Ct. at 523.)
It is conceded that the earlier cases of San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), and Guss v. Utah Labor Relations Board, 353 U.S. 1, 77 S.Ct. 598, 609, 1 L.Ed.2d 601 (1957), carry the implication that the Supreme Court of the United States looked with favor upon the proposition that the passage of the National Labor Relations Act, which instituted the National Labor Relations Board, preempted state as well as federal court jurisdiction where the conduct of the Union constituted an unfair labor practice under Section 8 or where the activity was arguably subject to Section 7 or 8 of that Act. This nebulous concept is dispelled for the reason that the preemptive doctrine has been clearly rejected in subsequent cases where the alleged conduct of the employer was not only arguably, but was concededly, an unfair labor practice within the jurisdiction of the National Labor Relations Board. Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 268, 9 L.Ed.2d 246 (1962). The Supreme Court of the United States specifically refused to apply the preemptive doctrine of the Garmon case in Smith v. Evening News Association, supra. The Court likewise refused to apply the preemption doctrine of Garmon in Local 174, Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Lucas Flour Company, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962) and in Atkinson v. Sinclair Refining Company, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962). The Fifth Circuit Court of Appeals in National Labor Relations Board v. George E. Light Boat Storage, Inc., 373 F.2d 762 (5th Cir.1967) stated:
Where the act of the employer constitutes both an unfair labor practice and a breach of contract, both the courts and the Board have jurisdiction to remedy the wrong. Smith v. Evening News Ass'n, 1962, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246. (373 F.2d at 767.)
The case at bar falls squarely within the decisions in the George E. Light Boat Storage and Evening News Association cases, supra.
In addition, on July 1, 1967, the parties to the case at bar were notified by the Regional Director of the National Labor Relations Board that he had refused to file a complaint upon the charges made by the Union of unfair labor practices on the part of Masonite.
The United States Supreme Court in the Dowd Box case, supra concluded that the legislative history of Section 301 establishes the fact that a provision making a breach of a collective bargaining agreement an unfair labor practice under the jurisdiction of the National Labor Relations Board was contemplated by Congress and rejected. The conference report thereon stated: "`Once parties have made a collective bargaining contract * * * the enforcement of that contract should be left to the usual processes of the law and not to the National Labor Relations Board.' H.R.Conf.Ref. *696 No. 510, 80th Cong., 1st Sess., p. 42." (Emphasis added.) 368 U.S. 511, 82 S.Ct. at 524.
The second question presented for our consideration is whether the anti-injunctive provision of the Norris-LaGuardia Act is applicable to state courts. Section 4 of the Norris-LaGuardia Act, 29 U.S.C.A. section 104 (1965), provides in part as follows:

No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts: (a) Ceasing or refusing to perform any work or to remain in any relation of employment * * *. (Emphasis added.)
Both the United States Supreme Court and the Mississippi Supreme Court have declined to rule on the question of whether the remedies available in state courts in cases involving breach of collective bargaining agreements are limited to the remedies available under federal law. Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists and Aerospace Workers, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), and Masonite Corp. v. International Woodworkers of America, AFL-CIO, etc., 206 So.2d 171 (Miss. 1967).
It is significant that the Norris-LaGuardia Act refers only to "court of the United States." Section 13(d) of that act defines the term "court of the United States" as "any court of the United States whose jurisdiction has been or may be conferred or defined or limited by Act of Congress, including the courts of the District of Columbia." It is indisputable from the precise language of the Act itself that the congressional intent was to restrict the operation of the Norris-LaGuardia Act solely to the federal courts, including courts of the District of Columbia. 29 U.S.C.A. § 113(d) (1965). There is no provision in Section 301 of the Labor Management Relations Act which expressly requires a state court to apply Section 4 of the Norris-LaGuardia Act so as to withhold injunctive relief. To the contrary, to so construe Section 301 would be in direct conflict with specific congressional intent to supplement by the passage of Section 301 the existing jurisdiction of state courts. Section 301 does not abolish equitable remedies which have been available in state courts. Justice Traynor of the California Supreme Court in McCarroll v. Los Angeles County District Council of Carpenters, 49 Cal.2d 45, 315 P.2d 322 (1957), certiorari denied 355 U.S. 932, 78 S.Ct. 413, 2 L.Ed.2d 415 (1958), expressly stated:
The restriction on the remedies available in the federal courts arises not from any policy in the Labor Management Relations Act itself but from the Norris-LaGuardia Act, and the policy of that statute as we have seen is confined to the federal courts. (49 Cal.2d at 64, 315 P.2d at 332.)
Numerous state courts have sustained their jurisdictional rights to utilize an injunction against strikes and picketing in breach of collective bargaining agreements. Lion Oil Co. v. Marsh, 220 Ark. 678, 249 S.W.2d 569 (1952); Radio Corp. of America v. Local 780, etc., 160 So.2d 150 (Fla. Dist. Ct. App. 1964); cert. denied 380 U.S. 973, 85 S.Ct. 1335, 14 L.Ed.2d 269 (1965); Dugdale Constr. Co. v. Operative Plasterers and Cement Masons Int'l Ass'n, Cement Masons Local 538, 257 Iowa 997, 135 N.W.2d 656 (1965); Armco Steel Corp. v. Perkins, 411 S.W.2d 935 (Ky. 1967); Rust Eng'r Co. v. United Bhd. of Carpenters and Joiners, etc., 210 So.2d 154 (La. Ct. App. 1968); Anchor Motor Freight N.Y. Corp. v. Local Union No. 445, etc., 12 Misc.2d 757, 171 N.Y.S.2d 506 (1958), affirmed 5 A.D.2d 869, 171 N.Y.S.2d 511 (1958); General Elec. Co. v. Int'l Union United Automobile, etc., 93 Ohio App. 139, 108 N.E.2d 211 (1952); Shaw Elec. Co. v. International Bros. Elec. Workers Local Union No. 98, *697 418 Pa. 1, 208 A.2d 769 (1965); Office Employees Int'l Union Local No. 129 v. Houston Lighting and Power Co., 314 S.W.2d 315 (Tex.Ct.Civ.App. 1958); and Associated Gen. Contractors, etc. v. Trout, 59 Wash.2d 90, 366 P.2d 16 (1961). The United States Supreme Court in the Avco case, supra, upheld the Sixth Circuit decision in Avco, 376 F.2d 337 (6th Cir.1967) and overturned that portion of American Dredging Company v. Local 25, Marine Division, etc., 338 F.2d 837 (3rd Cir.1964), which had held that a Pennsylvania court action under Pennsylvania law to enjoin a Union's violation of no-strike provisions of the contract was not one in which a federal court had subject matter jurisdiction within the original jurisdiction provision of the removal statute. In that case the court held that the complaint did not show that the controversy was arising under federal law or constitution. The American Dredging case also held that the anti-injunctive provisions of the Norris-LaGuardia Act had no application to state court actions. The United States Supreme Court in Avco decided the case on the question of removal but specifically refused to settle the dispute which exists between the Sixth Circuit in the Avco case and the Third Circuit in the American Dredging Company case over the applicability of the Norris-LaGuardia Act to state courts. The Supreme Court had an excellent opportunity in Avco to uphold the contention of the Sixth Circuit Court of Appeals that the respective states have been preempted of their authority to grant injunctive equitable relief in labor contract disputes. The logical conclusion to be drawn from their declination to make such a ruling is that they did not intend to deprive the states of remedial injunctive relief which existed at that time. It declined to do that which Congress had refused to do in the passage of Section 301. We are led to the conclusion that the rule of law under consideration in the American Dredging Company case was not overruled as to the question of the inapplicability of the Norris-LaGuardia Act to the state court. The court in American Dredging states that there is nothing in the Act itself or in its legislative history to indicate that it should be applied to the state and that in fact it explicitly states that it applies only to courts of the United States. We fail to find any case except the Sixth Circuit decision in Avco which holds that the limitations of Section 4 of the Norris-LaGuardia Act extends to the states.
Because of the legislative history and the purposes of the Norris-LaGuardia Act and of Section 301 of the Labor Management Relations Act, the repeated refusal of the Supreme Court for over a decade to specifically rule on the question and negate congressional intent, and to also overrule the overwhelming weight of authority in the various states which allow injunctive relief in labor disputes growing out of violations of collective bargaining agreements, we cannot agree that the broad general request for uniformity under Section 301, as set out in Local 174, Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Lucas Flour Company, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962), and Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 457, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), transcends and takes from the state courts the equitable remedy of the injunction.
Appellees urge a hypothetical syllogism as proof that the trial court was correct in denying the injunctive relief. The major premise in appellees' syllogism is that because of the Norris-LaGuardia Act federal courts are without power to enjoin strikes in spite of remedial latitude permissible under Section 301 of the National Labor Relations Act. The minor premise apparently is that under Section 301 of the Labor Management Relations Act the state forum cannot, because of the importance of uniformity, grant injunctive relief. Therefore, in the case at bar, the State of Mississippi is without power to issue the injunction. The fallacy in this argument lies in the minor premise. As we have shown herein under Section 301 of the Labor Management Relations *698 Act, the States have not been precluded from granting injunctive relief. As to the importance of uniformity, we are not persuaded that there is in uniformity intrinsic worth. Uniformity seeks to press into a common mold the natural, evolutionary concepts and interpretations of state and federal law as is evident in the diversity of interpretation of laws dominant in the United States District and Circuit Courts of Appeal. Uniformity, when carried to its ultimate, produces a stereotyped sterility in the interpretation of state and federal laws, the quintessence of which is classically exhibited by the absolute congruity of Soviet jurisprudence. The question immediately presented is: Why in the field of labor relations should uniformity be sought as a panacea for maladjustments while in all other fields of law, both state and federal, there has been, under varying facts, a pristine divergence of interpretation and application of state and federal laws which represents a healthy, normal condition of development rather than a malady, as implied by appellees, which requires immediate judicial therapy? Moreover, while logic has its place in law and in numerous other realms of human self-regulation, nevertheless hypothetical, syllogistic conclusions are not the prudent, judicious means whereby a fair and just interpretation of the law has been and can be determined. Injunctive relief for the enforcement of contracts is available in Mississippi. Frierson v. Sheppard Bldg. Supply Co., 247 Miss. 157, 154 So.2d 151 (1963); Redd Pest Control Co. v. Heatherly, 248 Miss. 34, 157 So.2d 133 (1963); Stephenson v. New Orleans & N.E.R.R., 180 Miss. 147, 177 So. 509 (1957); and Mississippi Theatres Corp. v. Hattiesburg Local Union No. 615, 174 Miss. 439, 164 So. 887 (1936).
It should also specifically be noted that threats and violence attended the strike at Masonite. In the Sixth Circuit case of Avco there was no allegation of violence connected with the strike. In that case the court stated that there was no violence involved and "* * * hence no foundation for the employment of state injunctive power under the police power doctrine." 376 F.2d at 339. Mississippi has long recognized the doctrine that even in the absence of a collective bargaining agreement where force and violence attend a strike the court may issue an injunction. United Bhd. of Carpenters, etc. v. Pascagoula Veneer Co., 228 Miss. 799, 89 So.2d 711 (1956); and Southern Bus Lines v. Amalgamated Ass'n of St., Elec. Ry., etc., 205 Miss. 354, 38 So.2d 765 (1949). While peaceful picketing (in the absence of a collective bargaining agreement) is lawful, nevertheless when the brutal hand of violence and dire threats attend a strike, there is no doubt that the State of Mississippi and the other states have the authority under their police power to grant an injunction to protect property and the lives of persons of the state.
Neither does the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., nor the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., prohibit the institution, by either party involved in a controversy of this character, of proceedings in a state court; nor do they place exclusive jurisdiction in federal courts. The Norris-LaGuardia Act curtailed only the equity jurisdiction of the federal courts in the field of labor disputes, and has no application to the equity courts of the state. * * * The National Labor Relations Act does not preempt all state control, nor more specifically the state police power. * * * The state and federal courts have concurrent jurisdiction of suits of a civil nature arising under the Constitution and laws of the United States, save in exceptional instances where the jurisdiction has been restricted by Congress to the federal courts. (205 Miss. at 378, 379, 38 So.2d 770.)
The final question raised by this appeal is: Were the acts done and the threats made to non-striking Masonite employees *699 by unidentified picketers admissible? Some of this testimony was excluded by the trial court. The appellant contends that such evidence should be admissible as part of the res gestae and to show the quo animo of the crowd. The Mississippi Court in Starks v. State, 245 Miss. 238, 147 So.2d 503 (1962), adopted the rule expressed in 32 C.J.S. Evidence, § 403 at 21-22, which is now 31A C.J.S. Evidence § 403(1) at 982-983 (1964), which provides:
No hard and fast rule can be laid down as to the admissibility of evidence as a part of the res gestae. The facts and circumstances presented in different cases vary so widely that the courts have come to the point of adjudging this question as it is presented by the particular case under consideration; and the admissibility vel non of evidence as part of the res gestae is a matter resting very largely in the discretion of the trial court. (245 Miss. at 243, 147 So.2d at 505.)
The cardinal issue involved here relates to picketing in furtherance of a strike. The record discloses that portions of the testimony bearing upon the acts of the persons participating in the picketing were in fact admitted in the case. The nature of the picketing, whether peaceful or violent, is equivocal and most important in this case.
We are not considering testimony offered by appellant which the trial court excluded relating to threatening telephone calls by unidentified persons, shooting into the homes of managers or pursuing employees when returning in automobiles to their homes. The testimony we do consider is that which was attempted to be introduced by the appellant relating to the main fact of picketing and attempting to explain its true nature. The statements were made during the turmoil by persons who were actually engaged in the picketing to persons who were actually present at the time. These were spontaneous, emotional, acerbated utterances which clearly revealed the present emotional and mental state of the crowd. It was held in Hart Cotton Mills v. Abrams, 231 N.C. 431, 57 S.E.2d 803, (1950), that where people acted in concert during a strike a witness could testify as to "booing" and "singing" as part of the res gestae and to show the quo animo of the crowd. Statements of unidentified witnesses may be admitted as part of the res gestae. Powers v. Temple, 156 S.E.2d 759 (S.C. 1967).
In the case at bar a unique situation is presented. Appellant employs approximately 2,000 men and it is practically impossible and unreasonable to expect and require members of appellant's management to know all of the union members, or their names. To exclude evidence of the actual picketing for this reason constitutes error.
At the time the astute chancellor, in overruling the writ for supersedeas, ruled that under Avco the states were divested of their jurisdiction because of the interpretation placed upon the operation of Section 301 and the injunctive prohibition under the Norris-LaGuardia Act, he had only the decision of the Sixth Circuit Court of Appeals of May 2, 1967, which at that time he interpreted to be preemptive insofar as the state's authority in the case at bar is concerned. This finding based upon the Sixth Circuit Avco decision is erroneous because the Supreme Court of the United States in 1968 in the Avco case specifically declined to hold that the states were precluded under Section 4 of the Norris-LaGuardia Act from issuing injunctions in labor disputes involving the violation of collective bargaining agreements. The United States Supreme Court had an excellent opportunity to affirm the findings of the Sixth Circuit Court of Appeals and another opportunity to hold that in actions arising under Section 301 of the Labor Management Relations Act, that Section 4 of the Norris-LaGuardia Act preempted state courts from any proceedings therein. *700 In lieu thereof the Supreme Court held as follows:
We find it unnecessary to rule on the holding of the Court of Appeals below that "the remedies available in State Courts are limited to the remedies available under Federal law." 376 F.2d, at 343. That conclusion would suggest that state courts are precluded by § 4 of the Norris-LaGuardia Act from issuing injunctions in labor disputes, even though the defendant does not exercise his right  which we confirm today  to remove the case to the District Court under 28 U.S.C. § 1441(b), and the state court therefore retains jurisdiction over the action. We have no occasion to resolve that matter here, since respondent did elect to have the case removed. (88 S.Ct. at 1237.)
The only reasonable inference to be drawn therefrom is that the Supreme Court would not by its decision interpret an act of Congress in order to accomplish that which Congress itself refused to do.
In conclusion, we decline now to do that which the Congress refused to do and change the permissive form of the verb "may be brought" in any court of the United States under Section 301 of the Labor Management Relations Act to the mandatory implication "shall be brought" in any court of the United States, in distinct violation of the Congressional intent as reflected in the debates and as construed by the United States Supreme Court. Furthermore, it would ill become this Court to foolishly rush in where the Justices of the United States Supreme Court declined to tread, and hold that under the suggestion of uniformity of Section 301 state courts in labor disputes are required to follow the anti-injunction provision of the Norris-LaGuardia Act since it is clearly stated in the Act and from the history of that Act that it was intended for application only to federal courts.
Though many practical problems presented by this cause have been resolved, the cause itself is far from moot since the appellant is still answerable under its bonds in the sum of $30,000.
From the foregoing we hold that the trial court erred in dismissing the temporary injunction, which is by this opinion made permanent but limited only to the term of the collective bargaining agreement entered into on March 3, 1967, by the parties thereto.
Reversed and judgment entered here for appellant.
All Justices concur.