227 So.2d 847 (1969)
Luther W. McCASKILL
v.
STATE of Mississippi.
No. 45492.
Supreme Court of Mississippi.
November 3, 1969.
*848 Semmes Luckett, Leon L. Porter, Jr., Clarksdale, for appellant.
A.F. Summer, Atty. Gen., by G. Garland Lyell, Jr., Asst. Atty. Gen., Jackson, for appellee.
INZER, Justice:
This is an appeal by Luther W. McCaskill, a medical doctor, who was indicted, tried and convicted in the Circuit Court of Coahoma County for the crime of murder under the provisions of Section 2223, Mississippi Code 1942 Annotated (Supp. 1966). He was sentenced to life imprisonment in the State Penitentiary. We reverse and remand.
Since we are reversing and remanding this case for another trial, we will only detail so much of the evidence as is necessary to dispose of this appeal. The proof on behalf of the State established that the deceased, Imogene Flowers Hurt, a resident of Greenwood, Mississippi, died on December 11, 1967, at the clinic operated by appellant in Clarksdale, Mississippi. An autopsy performed five days later revealed that she died as a result of infection and hemorrhage from a laceration of the cervix which is the exit from the womb. It was the opinion of the doctor who performed the autopsy that the laceration was caused in the removal of a fetus from the womb. It was also his opinion that the abortion occurred at least twenty-four hours prior to the death and that it could have happened as long as ten to fourteen days before death. He found no evidence of occlusion of the heart.
It was also established that the deceased was informed by her family physician early in October that she was pregnant and that she left Greenwood on Thursday afternoon, *849 December 7, after telling her mother that she was going to Clarksdale to attend a wedding party. The following day she talked to her mother in a collect telephone call. Her mother did not hear from her on Saturday and on Sunday her mother placed a call to a number she found in her daughter's room. When the number was reached she was given another number to call and upon calling she reached Dr. McCaskill and asked to speak to her daughter. The doctor first said that she was not a patient there, but when Mrs. Flowers insisted that she wanted to talk to her daughter, he said wait a minute and he would check. Her daughter then answered the telephone and over the objection of appellant, Mrs. Flowers was allowed to testify that she asked her daughter if she was all right and that her daughter replied, "yes, I am all right." Then Mrs. Flowers asked her if she was sure and her daughter then said, "yes, I am sure. You know that  of my pregnancy  and I am up here to the doctor getting something done about it." Mrs. Flowers said she talked with Dr. McCaskill on Monday and he told her that her daughter was all right and would be home the following day. The next day she learned of her daughter's death.
Dr. McCaskill testified in his own behalf and denied he performed an abortion on the deceased. He said that he first saw the deceased on Saturday about 5 P.M. prior to her death on Monday. She told him that she had been pregnant and that a doctor in her area had performed an abortion on her. She gave the doctor a history of having had numerous pelvic infections. His examination of her at that time revealed that her blood pressure was high and that her temperature was elevated. She complained of pains in her stomach and when he touched her stomach he found it to be very tender. He said this indicated that she had a pelvic inflammatory disease. He also found that she was nervous and had palpitation of the heart. He treated her by giving dextrose and a combination of streptomycin and penicillin intravenously. After a few hours she was much improved and she left the clinic. He testified that he did not see her again until Monday afternoon about thirty minutes after he came to work. At that time he examined her in the presence of his nurse. He said she told him that she had been bleeding from the vagina and that his manual examination revealed that she had a ragged cervix and he felt what was probably a tear on the right side of the cervix. He found her heart to be very rapid and her blood pressure to be elevated. She was short of breath and was coughing frequently. He treated her as he had done on the previous occasion by giving her fluid intravenously. Shortly before she died she called him and told him that she was very warm and felt faint, and asked for water. She was short of breath and complained of pain in the chest area; she was restless and he gave her demerol for chest pain. She seemed to improve for a minute or two and her pulse became very irregular and she said she was smothering. She stopped breathing and he gave her adrenalin and mouth to mouth resuscitation in an effort to revive her. He testified that it was his opinion that her death was caused by a coronary occlusion. He denied that he talked with Mrs. Flowers on Sunday but admitted that she called him on Monday and that he told her that her daughter was all right and that she should be home the following day.
Appellant's assignment of errors is as follows:
(1) in permitting the indictment, trial and conviction of appellant under that provision of Section 2223 of the Code of 1942, Recompiled, which purports to make the death of a mother resulting from an illegal abortion the crime of murder, because said part of said section is unconstitutional, null and void because the amendatory act by which it was sought to incorporate that change into the statute did not conform to constitutional requirements; (2) in granting the state's instructions which omitted the *850 necessary qualification, since the case against appellant depended entirely upon circumstantial evidence, that the state's evidence must exclude every reasonable hypothesis consistent with appellant's innocence; (3) in permitting the introduction, over appellant's objections, of accusatory declarations made by deceased in a telephone conversation with her mother; (4) in denying appellant's several motions for a mistrial on account of prejudicial conduct on the part of the prosecuting attorney; and (5) in permitting the trial jury, over appellant's objections, to be chosen in a manner which denied appellant his constitutional rights.
Appellant contends that the part of Section 2223, Mississippi Code 1942 Annotated (1956), which purports to make the death of the mother resulting from an illegal abortion the crime of murder, is unconstitutional. His argument is based, as we understand it, on the proposition that Section 2223 prior to the enactment of Chapter 260, Laws of 1952, did not make the death of the mother a crime under the abortion statute. A person who caused the death of a mother by an illegal abortion could only be prosecuted for manslaughter under the provisions of Section 2221 or 2220. Section 2215, according to appellant, also made it certain that the death under such circumstances was not murder. Appellant urges that in order to amend Section 2223 to make the death resulting from an illegal abortion a murder, Mississippi Constitution, Section 61 (1890) requires that Sections 2221, 2220 and 2215 be amended by inserting them at length in the amendatory act. We find no merit in this contention. Chapter 260, Laws of 1952, specifically repealed the abortion statute which contained no provision relative to the death of a mother as a result of an illegal abortion. The statute enacted by Chapter 260, Laws of 1952, is complete within itself and it provides among other things:
* * * if the death of the mother results therefrom, the person procuring, causing or attempting to procure or cause the abortion or miscarriage shall be guilty of murder.
No mention was made of the manslaughter statutes under which previous prosecution was maintained for the death of a mother as a result of an abortion. These sections were amended by implication. This being true the question is, does Chapter 260 violate Section 61 of the Constitution of 1890. This section provides:
No law shall be revived or amended by reference to its title only, but the section or sections, as amended or revived, shall be inserted at length.
In Hart v. Backstrom, 148 Miss. 13, 113 So. 898 (1927) in which it was contended that a statute violated Section 61, supra, this Court said:
In construing constitutional provisions, the courts should look to the history of the times and examine the state of things in existence when the Constitutional provision in question was adopted, in order to ascertain the mischief sought to be remedied. * * *
Cooley's Constitutional Limitations (7th Ed.) c. 6, pp. 214 to 216, inclusive, gives the historical background of constitutional provisions of other states substantially the same as Section 61 of our Constitution. The author discusses the evils existing in the process of legislation which were sought to be cured by such a constitutional provision, saying:
"The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effects, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute *851 one phrase for another in an act or section which was only referred to, but not published, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for the express purpose. Endless confusion was thus introduced into the law, and the Constitution wisely prohibited such legislation."
And concludes the discussion with this language:
"It should be observed that statutes which amend other statutes by implication are not within this provision; and it is not essential that they even refer to acts or sections which by implication they amend."
The author cites numerous authorities to sustain the proposition that such constitutional provision has no application to amendments by implication. In the Eighth Edition of Cooley's Constitutional Limitations there are some authorities to the contrary. We think, however, this court, in Heidelberg et al. v. Batson, et al., 119 Miss. 510, 81 So. 225, in unmistakable terms aligned itself with the courts which hold that such a constitutional provision has no application to amendments by implication. And, furthermore, this court has held, in several cases which are cited and relied on in the dissenting opinion in the present case, that Section 61 of the Constitution has no application to a statute which, although amendatory of a former statute, is complete within itself. (148 Miss. at 33, 34, 113 So. at 901).
Also in point is Hall v. State, 166 Miss. 331, 148 So. 793 (1933) and City of Jackson v. Deposit Guaranty Bank & Trust Co., 160 Miss. 752, 133 So. 195 (1931). We hold that the statute enacted by Chapter 260, Laws 1952 is not in contravention of Section 61, supra, and that it is a valid statute in its entirety.
Assignments of error number two and three will be combined for the purpose of this opinion. Appellant contends that the only instruction for the state is erroneous because it failed to require the state to meet its full burden of proof. The basis for this contention is that all the evidence which tends to establish that appellant performed an abortion which resulted in the death of the decedent is circumstantial and that under such circumstances the state has the burden not only to prove defendant guilty beyond a reasonable doubt and to a moral certainty, but also to the exclusion of every other reasonable hypothesis consistent with innocence. Appellant cites numerous decisions of this Court in support of this proposition. The state concedes that this is the law and that the only instruction for the state did not meet this requirement, but it contends that this rule of law is not applicable here for the reason appellant's conviction was not based solely upon circumstantial evidence. The state urges that the testimony of the mother of the decedent wherein she stated that her daughter told her over the telephone that she was up there to the doctor getting something done about her pregnancy constituted direct evidence of a conspiracy between appellant and decedent to have an illegal abortion. Appellant objected to the admission of this evidence on the ground that it was hearsay and contends that if admissible it was only circumstantial evidence that appellant performed the abortion that resulted in the death.
It is apparent that this evidence is hearsay, and if admissible it must fall within one of the exceptions to the hearsay rule. The state contends that it is admissible as part of the res gestae and cites a number of cases from other jurisdictions holding statements of this nature admissible in death by abortion cases. Our review of these cases and other cases involving this question reveals that a number of courts have held this type of evidence to be admissible in abortion cases as an exception to the hearsay rule. We have not found any decision of our court which is directly in point, however, in Starks v. *852 State, 245 Miss. 238, 147 So.2d 503 (1962) we said:
"The rule as to the admissibility of evidence known as the `res gestae rule' has been declared to be incapable of any precise definition, and it has been applied to so many different and unrelated situations that it has been said that the difficulty of formulating a description of `res gestae' which will serve for all cases seems insurmountable." 32 C.J.S. Evidence § 403, p. 19. Again, in this same text, it is stated: "No hard and fast rule can be laid down as to the admissibility of evidence as a part of the res gestae. The facts and circumstances presented in different cases vary so widely that the courts have come to the point of adjudging this question as it is presented by the particular case under consideration; and the admissibility vel non of evidence as part of the res gestae is a matter resting very largely in the discretion of the trial court." Ibid. pp. 21, 22. (245 Miss. at 242, 243, 147 So.2d at 505).
The trial judge held that the evidence in question was admissible as a part of the res gestae and we cannot say that he abused his discretion in so holding.
We cannot agree that this was direct evidence that appellant performed the abortion. We think that this evidence was admissible as a verbal act showing an intention on the part of the deceased to have something done about her pregnancy. It was circumstantial evidence, which when taken together with other circumstances in evidence, might have allowed a jury to find that appellant performed the abortion which resulted in the death.
Since all the evidence which tends to show that appellant performed the abortion which resulted in the death is circumstantial, it was reversible error not to require the state to meet its full burden of proof. Warren v. State, 166 Miss. 284, 146 So. 449 (1933); Williams v. State, 220 Miss. 800, 72 So.2d 147 (1954).
Assignment of error number four deals with alleged prejudicial conduct on the part of the District Attorney, but we do not deem it necessary to detail the instances pointing to what is contended constituted such conduct for the reason we do not anticipate that they will arise again on another trial. However, we do deem it proper to point out that although it is the duty of the district attorney to prosecute a case with diligence, he should guard against doing or saying anything that would prejudice the minds of the jurors and tend to cause them to decide a case on something other than the evidence. In his argument to the jury he should not inject statements of facts and conclusions not justified by the evidence. It is a part of his duty to see that the defendant as well as the State receives a fair and impartial trial. Adams v. State, 202 Miss. 68, 30 So.2d 593 (1947); Allen v. State, 175 Miss. 745, 166 So. 922 (1936).
Appellant's last assignment of error deals with the question of whether appellant's constitutional rights were denied in the selection of the jury. Since we are remanding this case for another trial, by another jury, it is not necessary to decide this question, but our review of the voir dire examination of the prospective jurors by the district attorney does disclose that the trial judge did allow the district attorney to transcend proper limitations in his examination of some of the prospective jurors. Many of the questions sought a committal as to what the juror would do or would not do in the case about to be tried. The examination should be in the abstract as to the class of case about to be tried and not as to what the prospective juror might or might not do in the particular case about to be tried. On another trial of this case the Court *853 should keep the voir dire examination within proper limits.
For the reasons stated, this case must be, and is reversed and remanded.
Reversed and remanded.
GILLESPIE, P.J., and PATTERSON, SMITH and ROBERTSON, JJ., concur.