National Fire Insurance Co. *v.* Slayden, et al.

No. 40013          March 19, 1956          85 So. 2d 916

*Cunningham & Cunningham,* Booneville, for appellant.

*Fant & Bush,* Holly Springs, for appellees.

288

GILLESPIE, J.

Appellant, herein called insurer, issued to appellee, herein called insured, an insurance policy covering a certain described tractor machine, commonly called a bulldozer, insuring against direct loss or damage by theft.

After completing the construction of a pond and road on the lands rented by one Garner, insured's employee drained the water from the bulldozer and left it on the edge of a field. The following day, which was a Sunday, one Conrad, who had subrented some of the land whereon had been built the pond and road, but who lived elsewhere in the neighborhood, went to the Garner property and started the bulldozer and operated it for some thirty or forty-five minutes smoothing the road. The engine became overheated by reason of being operated without water. Conrad left the machine near where he found it. Conrad was a friend of insured but had no permission to use the machine.

On Monday next, when insured's employees came to move the bulldozer to a new location, it was determined that the head was broken and the motor had sustained extensive damage from being operated without water. The machine was t a k e n to Memphis where expert mechanics repaired it and rendered insured a bill for $1134.08. About three months later, the crankshaft broke and insured paid another repair bill amounting to $473.15 in connection with the replacement of the crankshaft.

The jury returned a verdict for the total of the two repair bills, or $1597.95, and judgment was entered accordingly.

The case presents the question whether a policy insuring against theft covers a loss to the bulldozer equipped tractor resulting from the unlawful taking and use of the machine in the absence of an intent to permanently deprive the owner of his property, or stated differently, whether the taking must be the substantial equivalent of larceny.

██ █ While there is much authority elsewhere to the contrary, we hold that the term "theft" as used in a policy such as the one here under consideration should not be confined to technical or legalistic construction. It is a broader term than "larceny" and should be given the common and ordinary meaning according to the understanding of persons in the ordinary walks of life. Some consideration should be given to the purposes and reasonable expectations of an ordinary business man when making such a contract.

██ █ Where a machine or vehicle is insured against theft, without words defining the term "theft," and some unauthorized person unlawfully takes possession of such vehicle or machine for use by the unlawful taker for so long as he sees fit, and the vehicle or machine is damaged, the loss is covered by the policy and the insuror is liable therefor. Globe & Rutgers Fire Insurance

290

Co. v. House (Tenn.) 45 S.W. 2d 55; Donges v. American Auto Fire Insurance Co., 97 N.E. 2d 108; Baker v. Continental Insurance Co., (Kan.) 122 Pac. 2d 710.

The insuror complains of the character of proof on the question of damages. The mechanics who did the repair work did not testify. The insured, who was not an expert, testified that the mechanics who did the work showed him the damaged parts of the engine after it had been taken apart; that he was rendered the two repair bills above mentioned; that the mechanics who repaired the machine told him the crankshaft broke because of the burning (referring to the operation of the machine without water). The insured introduced a mechanic who testified in a general way that he thought the repair bills were reasonable, but this mechanic did no work on the machine, and he testified as an expert. The invoice for the first repair job, amounting to $1134.08, showed two items of $164.63 each for a "head", which the proof showed referred to the head to the engine, but the only qualified witness who testified as to how many heads the machine had said that it had only one.

██ Where costs of repairs are relied upon as the measure of damages, the proof must establish (1) that the repairs were necessary as the result of the wrongful act, and (2) that the cost was reasonable. ██ By stipulation, it was agreed that the costs of what was done in the repair of the machine was reasonable. But there was not sufficient proof that the various items appearing on the repair bills were necessary as a result of the overheating of the machine. The repair bills are insufficient to establish the necessity for the repairs, and the probable cost of the repairs does not satisfy the rule as to proof of necessity. 25 C.J.S., Damages, Par. 162. The fact that there appears on the first bill two heads emphasizes the basis of the rule that the repair bill alone is of little value as to the necessity for the repairs.

■■■ The lower court admitted the testimony of the insured that the mechanics who repaired the machine the second time told him that the crankshaft broke because of the burning. This was the only testimony on the issue of whether the crankshaft broke because of the overheating of the machine except the expert testimony of insured's mechanic, who testified that the crankshaft would be damaged if the machine were operated without water long enough to freeze up; but the machine did not freeze up, and the mechanic's testimony is of no value. The testimony of insured as to what the mechanic told him was purely hearsay and should not have been admitted.

The proof of the necessity for the repairs, as well as the reasonableness of the cost (which was not at issue because of the stipulation) could best be made by the mechanics who did the repair work, but we do not hold that such proof cannot be made except by the testimony of the mechanics.

■■■ The proof on the necessity for the repairs being insufficient, the cause is remanded for a new trial on the issue of damages only.

Affirmed as to liability, reversed and remanded for new trial on the issue of damages only.

*Roberds, P.J.,* and *Hall, Kyle* and *Holmes, JJ.,* concur.