HOUSTON CONTRACTING COMPANY, et al. *v.* ATKINSON

No. 43216 November 23, 1964 168 So. 2d 797

Satterfield, Shell, Williams & Buford, Cary E. Bufkin, Jackson, for appellants.

*Harold W. Davidson, J. E. Smith,* Carthage, for appellee.

224

226

LEE, C. J.

Mrs. Inez Atkinson, a resident of Leake County Mississippi, sued Houston Contracting Company, a Delaware corporation, and its employee Otis J. Ford, a resident of Louisiana, Mrs. Dean C. Moore and David L. Smith, residents of Leake County Mississippi. The declaration, simply stated, charged that Mrs. Atkinson sustained serious and permanent personal injuries as a direct and proximate result of the joint and concurrent negligence of all defendants in the operation of their motor vehicles.

Otis J. Ford and Houston Contracting Company filed a joint answer, denying that they were guilty of any negligence therein, and alleged that the collision resulted from the negligence of the other defendants. The answer of Mrs. Moore denied any negligence on her part, admitted that the plaintiff sustained injuries, but attributed them to the negligence of the other defendants. Smith's answer also denied that he was guilty of any negligence, but also attributed the incident to the negligence of the corporate defendant and its employee.

The place of the occurrence was a concrete bridge, 90 to 100 feet long and 22 to 24 feet wide, over a creek on State Highway 35, approximately five miles south of Kosciusko in Attala County.

The time was a fair day, with the sun still shining, about 5:00 P.M., on October 11, 1961.

Three motor vehicles were involved in a collision near the middle of the bridge. Otis J. Ford, in a 1960 Ford pickup truck, the leading vehicle, was driving northward. Mrs. Dean C. Moore, driving a 1953 Chevrolet car, the second vehicle, was following. In that car, Mrs. Atkinson, a guest of Mrs. Moore, was sitting in the middle of the front seat, with another guest on her right. David L. Smith, in a 1953 Buick car, was the third vehicle.

According to Mrs. Atkinson, when the Chevrolet got within 9 or 10 steps of the bridge, her attention was attracted by the following exclamation from Mrs. Moore, "Man, what in the world are you going to do!" She looked up, saw the pickup going on the bridge, felt the application of the brakes, and the car slowing down. The pickup pulled partly to its left, over the white line in the middle of the pavement, and stopped in front of a man, sitting on the left banister, about half way across the bridge. The Chevrolet then hit the pickup on the left side. In a matter of seconds, the Chevrolet was hit from behind, and it then struck the pickup again.

The pickup had no signal lights on and had given no hand signal. It then drove off the bridge and parked on the right side. The driver, Ford, came back to the car, and Mrs. Moore asked him, ''What in the world are doing, man, stopping in the middle of the bridge?'' He replied, ''Well, I just stopped a minute to ask the fellow something.'' Mrs. Moore also told him that ''you have just about killed us all.'' And Mrs. Atkinson said that she did not remember the further conversation because she was holding her neck, which had popped at the time like it was broken, and she thought it had been. She said that, when the pickup stopped, there was not sufficient room to pass — the Chevrolet would have either hit it or the banister of the bridge, depending on the way she might have turned. She said that she knew a vehicle should not follow so closely behind another that it cannot stop in time. She had charged Mrs. Moore with that kind of negligence, and Mrs. Moore was not far behind the pickup. She finally said, on cross-examination, that, if the pickup had not stopped suddenly without warning, the Chevrolet would not have hit it, and the Buick would not have hit the Chevrolet, and there would have been no accident. She also testified in detail concerning her injuries, and she was corroborated by her attending doctor and by several friends and acquaintances.

David L. Smith, a defendant, called as an adverse witness, corroborated Mrs. Atkinson's version. He said that he came over the top of the hill, and cut down his speed. As he got near the bridge he saw the two cars ahead. He saw the pickup stop in the middle of the bridge, and the Chevrolet then strike it. He saw no signals of any kind from the pickup, and did not think Mrs. Moore had time to give any. He said that not over 10 seconds could have elapsed between the stopping of the pickup, its being hit by the Chevrolet, the Chevrolet, in turn, being hit by the Buick, and the Chevrolet's

hitting the pickup again. The trouble in front of him happened so suddenly that he did not have time to stop. He admitted, in cross-examination by counsel for the appellants, that, with the suddenness of the stop ahead, he was not far enough behind to keep from striking the Chevrolet. He said that the pickup, when it got on the bridge, was "riding" the white line and it cut over at least 2 feet. At the time, it was going 10, 12, or 15 miles an hour when it suddenly stopped and the Chevrolet hit it.

The defendant, Otis J. Ford, called as an adverse witness for cross-examination, said that he was on his way to set out warning signals, if the digger, used in laying the pipeline, should get to the road by night. He saw a truck at the south end of the bridge, with a signal light flashing as if to give notice that it was about to turn left into the road from the shoulder. He did not notice any cars behind him. He saw another employee, sitting on the left banister, near the middle of the bridge. He at no time stopped on the bridge. He did ask that employee when the digger was coming through, but he kept driving. At no time did he turn to the left, but drove straight ahead on his side of the road, meeting nobody. As he drove along slowly, about 8 miles an hour, he was hit from behind and immediately thereafter, he was hit again. He said that he first heard a crash, then his pickup was struck, and, as his vehicle moved along, it was struck again from behind.

Mrs. Moore did not testify.

After the plaintiff rested, all of the defendants, by separate motions, asked for peremptory instructions in their behalf; but the court overruled all of the motions.

Ford and the corporate defendant then adduced their evidence. Again, Ford reiterated the events to show that he was blameless; that he did not stop; that he had his right tail light signalling that he was in the act of making a right turn as soon as he got off the bridge;

that he was struck from behind at a time when he was guilty of no negligence; and that the blame was that of the other defendants. Several of his fellow employees gave corroboration of his version.

So, at the close of all of the evidence, the plaintiff had offered evidence to show the sudden stopping of the pickup, near the middle of the bridge, partly in the west lane of traffic, without notice of any kind; that this stopping so suddenly, together with the fact that the Chevrolet was following closely behind, caused Mrs. Moore to hit the pickup; and that the Buick was travelling at such speed that it then hit the Chevrolet. Smith, by his own admission, was following too closely for him to stop in the suddenness of this occurrence. In other words, the evidence warranted the submission of the issues to the jury as to the negligence of all of the defendants.

However, the learned trial judge gave peremptory instructions for both Mrs. Moore and David L. Smith. This left for the jury only the issue as to Ford and the corporate defendant. The jury found a verdict for Mrs. Atkinson and fixed her damages at the sum of $30,000.00; and from the judgment rendered, the appellants, Houston Contracting Company and Ford, appealed.

The appellants have assigned and argued a number of alleged reversible errors.

After thorough study of this record, the Court finds that the judgment of the trial court must be reversed because of fatal errors in the refusal of certain requested instructions for the appellants. The opinion will deal only with such errors as will be necessary for aid in the decision of the case on a new trial.

The foregoing statement of the disputed facts, showing the contradictory theories of the parties, must be kept in mind. The Court has pointed out wherein there was evidence that the jury could have found that all

of the defendants were guilty of negligence, contributing to the collision. But, the court peremptorily exonerated Mrs. Moore and David Smith, from any negligence whatever. Also Smith himself admitted that, under the circumstances, he was not far enough behind to keep from striking the Chevrolet; and there was evidence that Mrs. Moore was following too closely. These two defendants, however, were discharged. There was no cross-appeal, and they are now exculpated from liability. This brings into view at the outset the question whether there was a correct statement in the instructions of the governing principles of law.

Appellants complain bitterly of the refusal of their instructions, numbered 22 to 24, both inclusive. Instruction under 24 was a peremptory, and was properly refused. Numbers 15 and 20 placed a greater burden on motorists than is required, and should not have been given. Numbers 12, 13, 14, 16, 18, 19, 21 and 23 undertook to set out correct principles, and they in fact do so, subject only to the fact that, in some instances, they are repetitious. They, or such number as would fully cover the defense, sought to be made, should have been given. Owing to the state of the case, and the necessity of a new trial, number 22 will have to be considered in the light of Bradshaw v. Stieffel, 230 Miss. 361, 92 So. 2d 565 (1957).

The opinion will not be extended in order to set out these instructions. Sufficient reason has been given to the parties for their guidance in a new trial.

██ █ As has already been pointed out, although repetition of the same principle in numerous instructions may be limited, the refusal of all of the stated instructions completely wiped out the defenses which the appellants offered by their evidence, and a judgment, under such circumstances, cannot be permitted to stand.

At one point, Dr. C. F. Lacey, when the cross-examiner stated that he understood the doctor to say that he

relied on the radiologist's reading of the X-ray for the diagnosis, replied: "That is right." Immediately, the cross-examiner objected that the doctor's evidence was hearsay, asked that it be stricken, and that the jury be instructed to disregard the doctor's opinion. The jury was retired, and the doctor explained that he read the pictures, made his diagnosis, and placed the patient in traction; that the radiologist came to the hospital only twice each week; and that, when the radiologist later came, he also read the X-ray pictures and merely confirmed the diagnosis which the doctor had already made from his own reading. The assignment, based on the court's ruling to that objection was without merit.

■■ ■ Appellants objected to the mode of proof as to the reasonableness of the hospital and medical expenses. Copies of these bills, in most instances, were offered. If there is objection the doctor is entitled to testify to the necessity and reasonableness of the charges. A proper member of the hospital, or a person cognizant of the reasonable charges for hospital services in the area where they were performed, should be able to qualify for the purpose of establishing fair and reasonable charges. ■■ ■ It is not intended that proof of this element of damages must be unreasonably exacting; but it must consist of a bona fide effort to show the reasonable value of the services which are performed. See Bryan Bros. Packing Company v. Mrs. Earl (Grace) Grubbs, decided October 26, 1964, but not yet officially reported; National Fire Insurance Company v. Slayden, 227 Miss. 285, 85 So. 2d 916 (1956). This statement should suffice as aid in a retrial of the case.

In the course of the plaintiff's cross-examination, David L. Smith stated that he was not hurt; and counsel asked whether he filed any lawsuit, and his reply was: "No, sir, I did not have any kind of insurance, only collision." Counsel for appellants asked for the jury to be retired. An objection was made by the appellants,

together with a motion for a mistrial. After hearing the matter, the court, at length, sustained the objection, and overruled the motion for a mistrial.

Our cases emphasize that reference to insurance should be eschewed. This opinion will take no further account of this incident on the theory that it will not recur during a new trial. There is no basis on which such an unresponsive reply should happen again. A recurrence of such would stem only from a deliberate intent to do so, and would be inexcusable.

■■■ Mrs. Atkinson, in her direct testimony, explained that her attention was attracted by the exclamation of Mrs. Moore as follows: ''Man, what in the world are you going to do!'' She then looked, saw the pickup going on the bridge, pulling partly over the center line to the left, and immediately thereafter stop. There was objection on the part of the appellants to the admission of this statement on the ground that it was hearsay.

The Court is of the opinion that this outcry on the part of Mrs. Moore, under the circumstances stated, constituted a part of the *res gestae* and was admissible. See Starks v. State, 245 Miss. 238, 147 So. 2d 503 (1962), and the authorities there cited; also Magee v. State, 145 Miss. 227, 110 So. 500 (1926). 22A Corpus Juris Secundum *Criminal Law,* section 662(1) (1961), deals with the topic *Res Gestae* in great clarity, and also explains that it is an exception to the hearsay rule. See also 31A Corpus Juris Secundum *Evidence* Section 403 (1) (1964) where *res gestae* is treated elaborrately. Note that at pages 982-3 thereof, it is said that ''* * * the admissibility vel non of evidence as part of the res gestae is a matter resting very largely in the discretion of the trial court. * * *''.

It follows therefore that the cause must be reversed and remanded for a new trial.

Reversed and remanded.

*Gillespie, Rodgers, Jones and Brady, JJ.,* concur.