No. A-CV-22-80

November 5, 1982

COURT OF APPEALS OF THE NAVAJO NATION

Dr. Charles DEAL, Anglo and
Christopher DEAL, Anglo, Appellants,

vs.

Claire BLATCHFORD, Appellee.

OPINION AND ORDER

Lawrence Long, Esq., DNA-People's Legal Service, Window Rock, Navajo Nation (Arizona) for appellee and John A. Chapela, Esq., Chapela, Chato & Hale Law Firm, Window Rock, Navajo Nation (Arizona) for appellants.

## BACKGROUND OF THE CASE

On October 10, 1979 Claire Ann Blatchford was stopped at a stop sign on Eighth Street in Fort Defiance preparing to enter Route 7. While she was stopped, Christopher Deal came along a walk area parallel on Route 7 and hit the passenger door of the Blatchford vehicle. Deal was driving a Honda motorcycle.

At the time of the incident Christopher Deal was 15 years of age, and the suit in the Window Rock District Court named both Christopher and his father, Dr. Charles Deal, as defendant. The Deals are not Indian.

This appeal involves three basic questions:

1) Did the trial court have jurisdiction over the persons of the defendant since they are non-Indians?

2) Did the trial court award compensatory damages on the basis of proper evidence?

3) Did the trial court properly award punitive damages?

## JURISDICTION

Recent developments in the field of Indian Affairs law require us to reassess our prior rulings on the jurisdiction of the Navajo Courts. The case of Navajo Tribe v. Orlando Helicopter Airways, Inc. leads the way in interpreting our jurisdictional statute to extend civil jurisdiction over non-Indians, and we will construe another clause of the statute

construed there in deciding this case. 1 Navajo R. 40 (1972). There have already been cases which have upheld our jurisdiction over non-Indians, but we will completely discuss the question of jurisdiction independent of the rationale of two of those cases. Peterson v. Ford Motor Credit Company, 2 Navajo R. 36, 39 (Crownpoint Dist., 1979) (minimal contacts under repossession statute); Keith v. Allred, 3 Nav.R. 191 (Chinle Dist. 1982). (The rationale of that case that the 1980 civil jurisdiction statute will justify civil jurisdiction over non-Indians for actions arising prior to the date of its enactment is specifically approved, but we choose to decide this matter on other grounds).

Our jurisdiction statute, 7 NTC Sec. 253(5) provides for civil jurisdiction over all areas where the prior Navajo Tribal Courts of Indian Offenses had jurisdiction and those provided for by a resolution of the Tribal Council. Today we hold that there is full civil jurisdiction over any person doing injury within the Navajo Nation because of the inherent sovereignty of the Navajo Nation and because of the residual jurisdiction of the prior courts.

It is important to know what tribal courts are and where they obtain their authority.

In the 1934 case of Washburn v. Parker, parties to a land title action in the Seneca Nation Peacemakers' Court attempted to obtain an order in United States District Court to restrain the action in the Peacemakers' Court. 7 F. Supp. 120 (W.D.N.Y., 1934). The federal court held that Indian courts are "'courts of a foreign jurisdiction, over which we have no control,'" and that tribal courts have the right to determine tribal internal affairs unless jurisdiction to do so is bestowed on Federal courts.

The Washburn decision is correct because the source of authority for tribal courts is the inherent sovereignty of their respective tribes and not the United States. Therefore tribal court authority is coextensive with sovereignty of the Indian nation itself. In the case of Iron Crow v. Oglala Sioux Tribe of the Pine Ridge Reservation, it was argued that Indian courts are not provided for in the United States Constitution and are thus powerless. 231 F.2d 89 (C.A. 8, 1956). The court held that the source of tribal court authority is not the United States Constitution and concluded

> "We . . . hold that not only do the Indian Tribal Courts Have inherent jurisdiction over all matters not taken over by the federal government, but that federal legislative action and rules promulgated thereunder support the authority of the Tribal Courts." Id. at 96. (Emphasis supplied).

Thus the jurisdictional power of our courts is an inherent power.

> "The powers of an Indian tribe in the administration of justice derive from the substantive powers of self-government which are legally recognized to fall within the domain of tribal sovereignty. If an Indian tribe has power to regulate the marriage relationships of its members, it necessarily has power to adjudicate, through tribunals established by itself, controversies involving such relation-

ships. So, too, with other field of local government in which our analysis has shown that tribal authority endures. In all these fields the judicial powers of the tribe are coextensive with its legislative or executive powers. Felix S. Cohen, Handbook of Indian Law, p. 145 (U.NM.Ed.) (Emphasis supplied). See also Mangold, "Powers of Indian Tribes," 55 Decisions of the Department of the Interior 14, 56 (Solicitor's Opinion, Oct. 25, 1934).

By now there should be utterly no question regarding the right of the Navajo Nation to exercise civil jurisdiction over non-Indians. Williams v. Lee, 358 U.S. 217 (1959); United States v. Mazurie, 419 U.S. 544, 557-558 (1975); Montana v. United States, 450 U.S. 554 (1981); Babbitt Ford Inc. v. The Navajo Indian Tribe, No. CIV 80-686 PCT CAM (D. Ariz., July 14, 1981); Merrion v. Jicarilla Apache Tribe, 71 L.Ed.2d 71 (1982).

Having set down clearly the fact the jurisdiction of this court and the trial court was, and is, inherent, coextensive with that of the Navajo Nation as a sovereign, and a product of the necessity to rule where sovereignty has been exercised, we will now explain why the tribal court had inherent jurisdiction. The Iron Crow case explains that jurisdiction over general matters is inherent. In other words, our tribal courts are courts of general jurisdiction, unlike the District Courts of the United States, which are creatures of Congress. As courts of general jurisdiction, the Navajo Courts exercise all jurisdiction which is not forbidden them. Therefore we will exercise general civil jurisdiction over all matters arising within the Navajo Nation. It may be argued, in addition, that the recent jurisdiction cases before the United States Supreme Court are retroactive in application, since they decided constitutional questions, and that our prior Navajo Tribal Courts of Indian Offenses had the inherent authority and jurisdiction spoken of in more recent days. In any event, since the incident complained of here took place within the Navajo Nation, on roads under the control of the Navajo Nation and under the scope of traffic laws of the Navajo Nation, there is more than sufficient ground for the exercise of jurisdiction.

We want to make clear what our ruling today does not mean. While we hold we have inherent general jurisdiction in matters coextensive with the sovereignty of the Navajo Nation, we do not hold we are not subject to limitations upon our jurisdiction. That is a matter to be decided at a future date, and the courts fully respect the proper role and authority of the Navajo Tribal Council. We do make our ruling based on clear and basic precident, but there must be some discussion of necessity as well. Poorly-worded and restrictive tribal codes forced upon various tribes by the Bureau of Indian Affairs we thankfully do not have, since the Navajo Nation is not organized under the Indian Reorganization Act. See, American Indian Lawyer Training Program, Manual of Indian Law, E-4 (1976 Ed.). Since the Navajo rely upon their inherent sovereignty and not the restrictions placed upon other Indian Nations, we are able to solve problems on our own as they arise. In the Arizona case of Enriquez v. Superior Court non-Indians sued Indians in state court following a motor vehicle incident within the Papago Reservation. 565 P.2d 522 (Ariz. App. 1977). The court held

that to permit a suit in state court in that instance would be to infringe on the right of the Papago to make their own laws and be ruled by them. Id. p. 523. The court made its ruling even in the face of the possibility the Papago Tribal Court might not provide a forum for personal injury actions. Id. Of necessity we must hold there is a reciprocity with our non-Indian brothers. It would be absurd to hold that non-Indian could use our courts for suits against tribal members but that Claire Blatchford would have to go all the way to St. Johns to sue the Deals. That would be as inconvenient a forum for the Deals as it would for Mrs. Blatchford. The point is that we, of necessity, must rule that the Navajo Courts are a forum for all individuals who claim to be injured within the Navajo Nation.

Therefore the District Court at Window Rock correctly exercised its general jurisdiction in this case.

PUNITIVE DAMAGES

The defendants assert that the court trial incorrectly granted punitive damages to the plaintiff. The "order" which is the judgment in this case awarded punitive damages in the sum of $250, and the defendants say that such damages may not be granted without proof of wanton and malicious action on the part of the defendant who was driving.

The defendants are correct in their contention, and since there are no findings of fact that the defendant acted through ill will, malice, evil motives, oppressive conduct or that he acted in such a wanton and reckless way as to show a disregard of the rights of others, we must reverse as to punitive damages. McCormick, Damages Sec. 79 (20th Reprint, 1975). If there was a specific finding by the trial judge of such conduct we would not overturn such a finding in the absence of clear evidence to the contrary. However, in this case we overturn the award of punitive damages due to the lack of findings of fact as to those points.

COMPENSATORY DAMAGES

The defendants complain that the plaintiff was permitted to make an estimate of the amount of damage to her vehicle, and say she did not produce an appraisal of the damages or a statement of repairs. The defendants ask to reverse on this point, saying the plaintiff was disqualified to testify as to the amount of her damages.

The general rule is that where one is going to use the cost of repairs as damages, he or she must show: (1) the repairs were necessary as the result of the wrongful act, and (2) that the cost of repair was reasonable. Natl. Fire Ins. Co. of Hartford v. Slyden, 227 Miss. 285, 85 So.2d 916. Such proof is best shown by the mechanics who made the repairs, but that is not necessarily the proof that is required. Id. It has been aid that it is not enough to show the cost of repairs, but that there must be proof that the repairs were necessary and that the amount paid for them was reasonable. Fitzpatrick v. Montague, 93 NYS2d 827. It has also been said that an itemized repair bill is not sufficient to show damages, but that there must be supporting testimony that the bill shows the amount reasonably spent for repairs made

necessary by the accident. <u>Scott</u> v. <u>Davis</u>, 56 So.2d 187 (La. App.). When a plaintiff comes before the court with an itemized repair bill or an estimate and testifies he paid them, and that testimony is supported by testimony that the repairs were required due to the collision, that is sufficient evidence as to the amount of damage, and the defendant then has the burden of producing evidence to show the amount is less. <u>Hemminger</u> v. <u>Scott</u>, 111 A.2d 619 (DC Mun. App.). <u>See</u>, generally, 3 POF, Damages, Proof 4.

A case which boils down these principles well is that of <u>H.A. Marr Co.</u> v. <u>Jones</u>, 226 P.2d 392 (Okl. 1950). That case involved an intersectional collision between the plaintiff's car and a truck driven by the defendant grocery. Facing the defense the palintiff did not competently prove damages, the court indicated that there must be proof that the repairs were necessary as a result of the injury. <u>Id</u>. at 394. The court noted the plaintiff testified as to where the other vehicle hit and the exact damage it caused. <u>Id</u> The plaintiff then testified as to the amount paid for the repairs. The court held that there was nothing in the record to question the amount paid or the necessity for the repairs, and said that "The proper rule is that where there is nothing to cast suspicion on the reasonableness of the amount paid for repairs, it will be presumed to be reasonable." <u>Id</u>. at 395.

In other words, a plaintiff can indeed testify to prove damages if the testimony properly shows the reasonableness of the repairs in amount and the necessary connection with the act that caused the injury.

There are often problems within the Navajo Nation of great distances, mechanic witnesses out of reach of a subpoena and other practical problems in proving damages. There is no reason why a plaintiff witness cannot testify to the satisfaction of the court in showing the connection between the repairs and the collision and why a plaintiff witness cannot testify as to the authenticity of repair estimates and bills. The plaintiff is always subject to cross-examination on these matters, and as long as the court is satisfied "there is nothing to cause suspicion on the reasonableness of the amount paid for repairs," a judgment may be granted in such an amount.

Returning to the facts of this case, this court is not satisfied that there was proper testimony as to the amount of repairs and their necessity. Where possible, mechanics should testify regarding their repair bills and estimates. Where the court is satisfied that is not possible, other evidence will be admissable. Itemized estimates and bills are a must. The problem this court has with the judgment in this case is that it is not satisfied to the finding on damages.

Therefore this case is REVERSED and REMANDED in accordance with this opinion.