United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 25, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-60299

_____

HARTFORD INSURANCE COMPANY OF THE MIDWEST

              Plaintiff - Counter Defendant - Appellant

TWIN CITY FIRE INSURANCE COMPANY; HARTFORD ACCIDENT &
INDEMNITY COMPANY

              Plaintiffs - Appellants

v.

MISSISSIPPI VALLEY GAS COMPANY; ATMOS ENERGY CORPORATION,
Successor in Interest to and doing business as Mississippi
Valley Gas Company

              Defendants - Counter Claimants - Appellees

_____

Appeal from the United States District Court
for the Southern District of Mississippi
No. 3:03-CV-1139

_____

Before KING, SMITH and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-appellant Hartford Insurance Company of the

Midwest appeals the district court's grant of summary judgment in

favor of defendant-appellee Mississippi Valley Gas Company on its

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

-1-

coverage claim in the amount of $557,919 under property insurance policies covering natural gas produced by certain designated wells. Hartford Insurance Company of the Midwest also appeals the district court's denial of its motion for summary judgment as well as its motion to strike portions of the affidavit of Mississippi Valley Gas Company's petroleum engineering expert, Wayne Stafford. We agree fully with the district court that resolution of this issue is "hardly apparent." That said, we REVERSE the district court's grant of summary judgment in favor of Mississippi Valley Gas Company and RENDER judgment for Hartford Insurance Company of the Midwest.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case concerns an insurance coverage dispute between plaintiff-appellant Hartford Insurance Company of the Midwest ("Hartford") and defendants-appellees Mississippi Valley Gas Company and its successor in interest Atmos Energy Corporation (collectively "MVG"). The basic factual predicate underlying the instant appeal is undisputed. In 1982, MVG began purchasing natural gas produced by the Asa Watson Well in Monroe County, Mississippi from the well's owner and operator, Howard G. Nason. In 1989, MVG entered a separate contract to purchase natural gas from a different well in Monroe County known as the Catherine Watson Well from Nason Production Company, Inc., Howard G. Nason,

-2-

Howard F. Nason, and Anice H. Nason.[2]  The gas produced from each well flowed through a separate line to a distinct sales meter, where the volume of gas from the well was compressed, measured, and ultimately delivered to MVG's pipeline.  Pursuant to the contracts between MVG and the Nasons, legal title to the gas transferred from the Nasons to MVG at the point of the sales meter.  After the gas was metered, it was transported to MVG's facilities and into high-pressure transmission lines for distribution.

The district court's opinion succinctly describes the facts underlying the coverage claim:

> When the Asa Watson Well stopped producing in March or April 1999, the Nasons removed the meter from the Asa Watson Well and diverted the gas production being sold to MVG from the Catherine Watson Well through the sales meter for the Asa Watson Well.
> Thereafter, in September 2000, MVG discovered that an underground "tap" had been placed on MVG's line downstream of the meter which diverted gas from MVG's line through an underground pipe back to a point upstream of the meter, where the gas was reintroduced or reinjected into the gas stream.  As a result of this recirculation, gas which had already been metered and purchased by MVG was recirculated and hence remetered and resold by the Nasons to MVG.

R. at 234-35.  Based on reports from MVG's petroleum engineering expert Wayne Stafford's investigation, the recirculation scheme caused an estimated total monetary loss to MVG of $1,804,125

---

[2]  After Howard G. Nason died in 1995, his interest in the wells passed to his wife, Anice.

between 1986 and September 2000.[3]

In January 2003, MVG submitted a proof of loss claim in the amount of $557,919 to recoup a portion of this loss under the Hartford policies covering the period between September 1, 1994 and January 31, 1999.[4]  More specifically, MVG's "theft" claim was for the value of 226,742 Mcf of recirculated natural gas, which represented the difference between the volume of gas actually produced by and delivered to MVG from the wells during this period (17,285 Mcf) and that same volume of gas recirculated through the meter more than fourteen times (244,027 Mcf).  MVG did not, however, include the small volume of gas consumed to execute the recirculation scheme itself in its claim under the Hartford policies.[5]

---

[3]  Immediately after discovering the recirculation scheme, MVG began to withhold payments for natural gas purchases from another well owned by Anice Nason called the Simmons Well, claiming it was entitled to offset the unjust enrichment from the overpayment with respect to the two Watson Wells.  On or about March 1, 2004, MVG reached a settlement with the Nasons and repaid $100,000 of the $747,000 it had previously withheld.

[4]  MVG stipulated that it had withdrawn its claim on the policies issued between July 14, 1988 and September 1, 1994, and after January 31, 1999.  We therefore limit our focus on this appeal to the Hartford policies covering the period between September 1, 1994 and January 31, 1999.

[5]  During oral argument, Hartford stated that the recirculation scheme was basically equivalent to tampering with the meter itself.  For example, recirculating the same volume of gas ten times through a properly calibrated meter would overcharge by the same amount as manipulating the meter to price at ten times the proper rate upon the first pass through the meter.

On September 30, 2003, Hartford filed a diversity action in the Southern District of Mississippi seeking a declaratory judgment that Hartford was not obligated to pay MVG's claim for loss of natural gas under the applicable property insurance policies. MVG filed an answer and counterclaim for declaratory relief on October 30, 2003, seeking an adjudication that the Hartford policies did indeed provide coverage for the claim. The parties submitted cross-motions for summary judgment on July 15, 2004.

The parties did not dispute before the district court that a "theft" that results in a loss of or damage to the covered property is covered under the relevant Hartford policies. They differed, however, in their characterization of the scheme and the precise nature of the alleged loss. MVG asserted that the recirculation scheme amounted to repeatedly stealing and reselling the same volume of gas and therefore constitutes a covered "theft" under the policies. Hartford contended, however, that the insurance policies at issue do not provide coverage to MVG under these circumstances because: (1) the only property lost was "money" from overpaying for the volume of gas actually received, and purely monetary losses are expressly excluded from the definition of covered property; and (2) any loss of covered property was otherwise excluded from coverage under the "voluntary parting" exclusion or "missing property" limitation in the policies. On August 31, 2004, while the summary judgment

motions were still pending, Hartford also moved to strike the affidavit of Wayne Stafford because it allegedly failed to comport with the formal requirements of FED. R. CIV. P. 56(e) and because certain portions allegedly contained inadmissible legal conclusions.

On January 18, 2005, the district court denied Hartford's motion for summary judgment and granted MVG's motion for summary judgment, "conclud[ing], albeit not with certainty, that MVG sustained a loss that falls within the coverage of Hartford's policies." R. at 233. With respect to the contested issue of whether the recirculation scheme constituted a "direct physical loss" of covered property under the Hartford policy, the court acknowledged that "there are compelling arguments on both sides of the issue." Id. at 236. The court rejected Hartford's characterization of MVG's claim as a "loss of money" from overpayment and found that "the facts readily support[ed] the conclusion that a theft occurred when the Nasons siphoned natural gas from MVG's pipeline." Id. at 237.

> In the court's view, the fact that the Nasons resold the natural gas they had stolen from MVG to MVG, so that MVG thus ended up acquiring all the natural gas produced by the wells because the gas was recirculated through the meter rather than simply being siphoned off and sold to another buyer, does not change the fact that there was a dispossession, or "direct physical loss" of the natural gas, for a period of time.

Id.

After rejecting Hartford's contention that MVG suffered only

a loss of money, the court summarily disposed of Hartford's alternative arguments that the policies' "voluntary parting" exclusion and "missing property" limitation applied to deny coverage.  More specifically, the court found that (1) MVG did not "voluntarily part" with the gas that was siphoned off through the underground tap to fall within that exclusion; and (2) the "missing property" limitation did not apply given the physical evidence showing how the gas was diverted and remetered.

Because the district court's summary judgment order decided only the issue of coverage under the policies and not the precise extent of liability, Hartford submitted a motion for clarification accompanied by a request for certification of the coverage question for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  In essence, Hartford contended that if coverage exists at all under the policies, it extended only to a single instance of recirculation.  Consistent with its previous order, the court concluded that "the property at issue was repeatedly lost" and accordingly granted summary judgment in favor of MVG on the liability issue in the amount of $557,919.  R. at 259. Having granted MVG's motion for summary judgment as to both the coverage and liability issues, the court found the request for discretionary interlocutory appeal pursuant to § 1292(b) to be moot and entered a final judgment in favor of MVG on March 3, 2005.  Hartford timely filed its notice of appeal on March 29, 2005.

## II. STANDARD OF REVIEW

We review a grant of summary judgment de novo, applying the same standards as the district court. Fed. Ins. Co. v. Ace Prop. & Cas. Co., 429 F.3d 120, 122 (5th Cir. 2005). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000) (citation omitted). A fact is "material" if "its resolution could affect the action's outcome." Minter v. Great Am. Ins. Co. of N.Y., 423 F.3d 460, 465 (5th Cir. 2005). The evidence and inferences from the summary judgment record must be viewed in the light most favorable to the nonmovant. Id.

## III. DISCUSSION

In resolving this coverage dispute, we must first examine the relevant provisions in the property insurance policies at issue. Interpretation of an unambiguous insurance contract is a question of law, which this court reviews de novo. Am. States Ins. Co. v. Bailey, 133 F.3d 363, 369 (5th Cir. 1998). The

parties further agree that Mississippi law governs this diversity action.  "Under Mississippi law, an insurance policy is a contract subject to the general rules of contract interpretation."  ACS Constr. Co. of Miss. v. CGU, 332 F.3d 885, 888 (5th Cir. 2003) (citing Clark v. State Farm Mut. Auto. Ins. Co., 725 So.2d 779, 781 (Miss. 1998)).  "Although ambiguities in an insurance policy are construed against the insurer, a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured."  Titan Indem. Co. v. Estes, 825 So. 2d 651, 656 (Miss. 2002).

The Special Property Coverage Form provides coverage for "direct physical loss of or damage to Covered Property caused by or resulting from any Covered Cause of Loss."  The parties agree that the "Covered Property" at issue under the policies is the natural gas produced by the designated Watson Wells.  Under the policies, "Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is" otherwise excluded or limited by the operation of certain enumerated conditions in the policy, including the "voluntary parting" exclusion and "missing property" limitation.[6]  The policies also provide that "theft"

---

[6] The "voluntary parting" exclusion expressly denies coverage for any loss or damage caused directly or indirectly by:
i.   Voluntary parting with any property whether or not induced to do so by any fraudulent scheme, trick, device or false pretense.
The "missing property" limitation denies coverage for loss or damage to:
c.  **Missing Property**

and "attempted theft" that result in loss of or damage to covered property constitute "specified causes of loss" under the policies.  The policies, however, expressly exclude mere monetary losses from the definition of "covered property."[7]

Given the unambiguous language in the relevant insurance policies, the primary source of disagreement between the parties is how the loss suffered by MVG from the recirculation scheme should be characterized.  Hartford contends that there was no actual deprivation of the covered property that would constitute a "theft" because MVG eventually received all of the natural gas produced from both Watson Wells pursuant to its contracts with the Nasons.  In essence, Hartford contends that the only result of the recirculation scheme was to cause MVG to unwittingly overpay for the gas--i.e., MVG experienced only a loss of "money" that would not be covered under the clear terms of the relevant policies.  On the other hand, MVG maintains that the district court correctly characterized the recirculation scheme as multiple, albeit temporary, "thefts" of the natural gas from the Catherine Watson Well that are covered under the policies.

---

> Property that is missing, if there is no physical evidence to show what happened to it.  An example is a shortage disclosed on taking inventory.

[7]  Specifically, the policy excludes:
2.   **Property Not Covered**
     Covered Property does not include:
     a.   Accounts, bills, currency, deeds, evidences of debt, money, notes or securities.

As a general matter, property insurance coverage is triggered by some threshold concept of physical loss or damage to the covered property.  See 10A COUCH ON INS. § 148:46 (3d ed. 2005).

> The requirement that the loss be "physical," given the ordinary definition of that term is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.

Id.  We have previously stated that "[t]he language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state--for example, the car was undamaged before the collision dented the bumper."  Trinity Indus., Inc. v. Ins. Co. of N. Am., 916 F.2d 267, 270-71 (5th Cir. 1990).  Consistent with these general principles, absent some physical manifestation of loss or damage to the gas itself, the property insurance policies issued by Hartford in this case expressly exclude mere monetary losses from coverage.

The fundamental difficulty with MVG's position is that, except for the unclaimed de minimis portion of gas consumed to carry out the recirculation scheme, MVG actually received all of the available gas produced by the two Watson Wells.  MVG cites National Fire Insurance Co. of Hartford v. Slayden, 85 So. 2d 916, 917 (Miss. 1956), for the proposition that even a temporary deprivation of property would be covered under an insurance

policy that covered against "theft" losses. The holding in Slayden was actually considerably narrower than this and consistent with our disposition of the instant case. In Slayden, the Supreme Court of Mississippi affirmed in part a jury verdict assessing liability under an insurance policy where a third party had damaged the engine of a "bulldozer equipped tractor"--the covered property under the insurance policy--by improperly operating it without water. Id. Even though the damaged tractor itself was returned to the insured party, the court concluded that the damage resulting from temporary "theft" of the property was covered under the insurance policy.

To the contrary, here the gas from the Watson Wells was not physically lost or damaged in any way before it was eventually returned to MVG after multiple passes through the meter. In this sense, unlike the situation in Slayden, the covered property was not returned to the insured party in a damaged state. Therefore, MVG's proof of loss claim lacked the requisite "direct physical loss of or damage to" the covered property under the insurance policies.

After careful examination of the relevant provisions in the Hartford policies, we conclude that MVG's overpayment for the recirculated gas from the Watson Wells is more accurately described as a loss of "money," rather than covered property. Accordingly, the district court erred in finding a covered loss under the insurance policies issued by Hartford. Because we

-12-

reverse and render judgment in favor of Hartford based solely on our conclusion that the recirculation scheme merely resulted in an uncovered loss of money, we expressly decline to reach the portions of the district court's decision concerning the application of the "voluntary parting" exclusion and "missing property" limitation under the policies. We also need not reach the issue of whether the district court erred in denying Hartford's motion to strike Wayne Stafford's affidavit.

## IV. CONCLUSION

For the foregoing reasons, we REVERSE the district court's grant of summary judgment in favor of Mississippi Valley Gas Company on both the coverage and liability issues and RENDER judgment for Hartford Insurance Company of the Midwest. Costs shall be borne by Mississippi Valley Gas Company.